CHARLES B. ENSIGN, doing Business as C. B. ENSIGN & COMPANY, Appellant, v. EDGAR CRANDALL, Respondent.

St. Louis Court of Appeals.    Opinion Filed May 3, 1921.

1. **BILLS AND NOTES:** Notes Obtained by Fraud: Holder in Due Course: Defective Title Shown: Burden of Proof. In an action upon promissory notes, where the title to the notes in suit was shown to be defective, within the meaning of section 841, Revised Statutes 1919, by proof that defendant's signature to the notes was obtained by fraud, by the terms of section 845, Revised Statutes 1919, the burden was placed on plaintiff to prove that he or some person under whom he claims acquired the title as a holder in due course, as defined by section 838, Revised Statutes 1919.

2. ———: ———: ———: Evidence: Prima-facie Showing: Not Controverted: Holder Entitled to Directed Verdict. The burden placed

upon the holder by section 845, Revised Statutes 1919, is not the burden of proof in its strict sense, but is the burden of producing evidence at some stage of the trial to make or meet a prima-facie case, and when plaintiff made a prima-facie showing that he acquired the title to the notes in suit as a holder in due course, he discharged the burden resting upon him, and it then devolved upon defendant to adduce evidence tending to overcome the prima-facie case thus made; and, if defendant failed in this, plaintiff was entitled to a directed verdict.

3. ——: ——: ——: ——: ——: ——: Controverting Evidence: Insufficient to Overthrow Prima-facie Case. In an action on promissory notes, where there is no substantial evidence tending to controvert the prima-facie showing made by plaintiff that he was a holder in due course, so as to make it a question for the jury to say whether plaintiff took the notes without knowledge of the defect of infirmity in the payee's title thereto, and in good faith, even though the evidence shows that defendant was defrauded by the payee's representative, plaintiff, suing as a holder in due course, was entitled, as a matter of law, to recover on the notes, and the trial court erred in refusing peremptorily to direct a verdict for plaintiff.

Appeal from the Circuit Court of Clark County.—*Hon. N. M. Pettingill*, Judge.

REVERSED AND REMANDED.

*W. L. Berkheimer*, and *John M. Dawson*, for appellant.

*Charles Hiller* and *T. L. Montgomery*, for respondent.

ALLEN, P. J.—This is an action upon two promissory notes, each for the sum of $375, executed by the defendant on April 4, 1913, payable to the order of the Night Commander Lighting Company, a corporation, two years after the date thereof, with interest from maturity at the rate of six per cent. per annum. Plaintiff sues as the holder in due course of said notes. The trial below, before the court and a jury, resulted in a

verdict and judgment for the defendant, and the plaintiff has brought the case here by appeal.

The petition is in two counts, one upon each of the notes. In each count, after alleging the execution and delivery of the note therein mentioned to the said payee named therein, it is alleged that the payee endorsed and delivered the same to the Jackson Brokerage Company; that the latter, for valuable consideration paid to it by plaintiff, endorsed the note in blank and delivered it to plaintiff, who thereby became the owner and holder thereof prior to the commencement of the suit; that plaintiff is an innocent purchaser thereof "without notice whatever of any infirmity in the title thereto of his immediate endorser." Each count concludes with the usual prayer.

The answer admits the execution of the notes in suit and their delivery to the Night Commander Lighting Company, but denies each and every other allegation in the petition. Further answering the defendant alleges that at and prior to the execution of these notes one Rickey was an agent of the Night Commander Lighting Company, and local manager of its business conducted at Quincy, Illinois; that prior to the execution of these notes the defendant became a surety upon a bond executed by Rickey to said company, conditioned on the faithful performance by Rickey of his duties as such agent and manager; and that at the time of the execution and delivery of the notes sued upon, one Jones, president and manager of said company, falsely and fraudulently represented to defendant that Rickey was short in his accounts with the company, and owed the company a large sum of money; all of which was false and untrue, and known so to be by said Jones. And it is averred that the defendant, relying upon said false and fraudulent statements, and in order to discharge his supposed obligation as surety on the bond, did, on said April 4, 1913, execute three promissory notes to the said Night Commander Lighting Company, each for

the sum of $375, due respectively in one, two and three years from said date, and delivered the same to said company. And it is alleged that Rickey was not then, nor has he ever been, short in his accounts with said Night Commander Lighting Company, but has faithfully performed all of his duties as the agent and manager of said company, and that defendant was in no wise liable on said bond. And it is further averred that the Night Commander Lighting Company and the Jackson Brokerage Company are one and the same, and owned by the same individuals; and that plaintiff, when the notes in suit were assigned to him, knew all of said facts and participated in the fraudulent purpose of said endorser, and is not in good faith the owner of the notes in suit, in due course, for value before maturity, and that the same are void.

Other allegations touching the alleged fraud are made, which need not be noticed. And the answer alleges that of the three notes so executed and delivered by defendant, one thereof, viz., that due one year after said date, was, at its maturity, presented by the Jackson Brokerage Company to a bank in Wyaconda, Missouri, where the notes are made payable, for payment, purporting to have been endorsed by the Night Commander Lighting Company and by the Jackson Brokerage Company; that said brokerage company was organized for the purpose of taking and holding notes payable to the Night Commander Lighting Company, so that said brokerage company might pose, as an innocent purchaser thereof for value in due course of business. And it is averred that when said note payable one year after date became due, it was protested for nonpayment, and has never been paid, "because of the facts in this answer set forth, all of which was known to this plaintiff when the notes sued on were assigned to plaintiff for collection, and are held by him with the knowledge of the fraudulent acts of the endorsers of said notes sued on, and he is not in good faith the owner and holder for value in due course and should not recover."

The reply puts in issue the new matter of the answer.

At the trial the notes were introduced in evidence, bearing endorsements purporting to be those of the Night Commander Lighting Company and the Jackson Brokerage Company, each endorsement being made "per G. W. Mayes." Plaintiff, by deposition, testified that he purchased the notes in suit on November 9, 1914, from the Jackson Brokerage Company, the latter being represented by G. W. Mayes, who brought the notes to plaintiff's office; that the notes bore the endorsement of the Night Commander Lighting Company, known to him to be the genuine and authorized endorsement of the company, and were endorsed by the Jackson Brokerage Company, through Mayes, "one of the proprietors and chief owners of the Jackson Brokerage Company, a partnership," in his presence, in his office in Chicago. Plaintiff's further testimony is that in the transaction in question he purchased the two notes in suit together with six other notes, aggregating a total face value of $2335, for which eight notes he paid $1940. And he introduced in evidence two cancelled checks, both dated November 9, 1914, drawn by him on the Continental Commercial Bank of Chicago, one for the sum of $1000, and the other for the sum of $940, the former being payable to the Night Commander Lighting Company and the latter to the order of the Jackson Brokerage Company. Plaintiff testified that these checks were thus made payable, one to the Night Commander Lighting Company and the other to the Jackson Brokerage Company, at the request of Mayes, from whom he purchased the notes. Each of the checks is stamped paid, and, in addition to the endorsement of the payee, bears the endorsement of the Jackson City Bank, of Jackson, Michigan, to the order of the Corn Exchange National Bank, of Chicago, and bears the "clearing house stamp," purporting to show that it was "paid through the Chicago Clearing House" on November 10, 1914, at 10 A. M. And plaintiff testi-

fied that both checks were paid by the Continental Commercial Bank, upon which they were drawn, and charged to his account.

When asked if he knew of any infirmities or other defenses in favor of the maker of these notes when he purchased them, he said that he did not; that on the contrary he was informed that they had been given in settlement of an account between the maker and the Night Commander Lighting Company; and that he purchased the notes before maturity in the usual course of business. He further testified that on said November 9, 1914, he wrote to defendant a letter, a copy of which appears in the deposition, and which purports to be a letter notifying the defendant of plaintiff's acquisition of the notes in suit, and requesting defendant to mail to plaintiff a check or draft for each note when the same should become due.

With this deposition, and exhibits attached thereto, in evidence, plaintiff rested.

As a witness in his own behalf defendant testified that he was a resident of Wyaconda, where he was engaged in the implement business; that he knew J. E. Jones who was president of the Night Commander Company, and that in the course of his business he bought goods from that company through its "branch house" in Quincy, Illinois, which was in charge of one Rickey mentioned in the answer, as manager thereof. And defendant's evidence shows that he became surety on a bond for Rickey, as alleged in the answer, and that at the time of the execution of the notes in suit Jones, as presdent of the Night Commander Lighting Company, falsely represented to him that Rickey was short in his accounts with said company, and thus obtained the two notes sued upon, together with another note for $375 due one year after said date, in settlement of the alleged shortage and purporting to be in discharge of defendant's obligation as surety on said bond. It is unnecessary to set out the evidence relating to this matter in

detail. It is sufficient to say that testimony both of defendant and of Rickey, the latter testifying as defendant's witness, tends to show that the notes in suit were in fact procured by fraud on the part of the Night Commander Lighting Company through its president Jones. And this testimony stands uncontradicted in the record.

Defendant's own testimony shows nothing tending to show any knowledge by plaintiff of the fraud said to have been practiced upon defendant in procuring those notes. Rickey testified that the Night Commander Lighting Company had its principal place of business in Jackson, Michigan, two hundred and nine miles from Chicago; that Jones was president and general manager of that company and president and general manager also of the Jackson Brokerage Company, and that Mayes was secretary and treasurer of both companies. He stated that the Jackson Brokerage Company was organized "to take over the notes that were taken by the Night Commander Lighting Company;" but on plaintiff's motion this was stricken out. He was then asked what the Jackson Brokerage Company did, and he answered: "They took the paper from the Night Commander Lighting Company for collection." The court allowed this answer to stand. The witness testified that he knew plaintiff, C. B. Ensign. When asked what connection plaintiff had "with the position of this company," he answered: "I know he collected papers for the Night Commander Lighting Company." Again the witness was asked concerning the business relations between plaintiff and the two companies mentioned, on or about November 9, 1914, and he answered: "Charles B. Ensign collected papers and notes for the Jackson Brokerage Company and for the Night Commander Lighting Company." And there is testimony as to the presentation and dishonor of the note first falling due, as alleged in the answer.

In behalf of defendant, one Martin, a local bank clerk, testified, in substance, that in his opinion the checks above mentioned, if executed in Chicago on No-

vember 9, 1914, could not have passed through the Jackson bank, 209 miles from Chicago, then through the Corn Exchange bank of Chicago, as indicated by the endorsements thereon, and have reached the clearing house in Chicago at ten o'clock on the following day. On cross-examination, however, he testified that he had never been in Jackson, Michigan, or in Chicago, knew nothing about "how they handled papers there" except by hearsay, and had no knowledge of the time schedule of the trains operating between the two places.

One Lang, a local bank cashier, likewise testified that in his opinion these checks could not have pursued the course mentioned and have reached the Chicago Clearing House by ten o'clock on November 10, 1914. But on cross-examination he stated that if the check was cashed in Jackson on November 9, it could have reached the Chicago Clearing House by 10 A. M. on the following day.

In rebuttal, one Wilkerson, an agent for the C. B. & Q. Railroad, testified that about ten trains per day were operated each way between Chicago and Jackson, Michigan; the fast trains which usually carry mail, making the trip in about four hours.

For plaintiff the court gave twelve instructions. Eight instructions offered by plaintiff were refused, including a peremptory instruction to find for plaintiff on both counts. Six instructions offered by defendant were given.

Appellant makes twenty assignments of error. One of these assignments is that the court erred in refusing to peremptorily direct a verdict for the plaintiff. As shown above, the defense of fraud between the original parties set up by defendant in his answer was shown by uncontradicted evidence adduced by the defendant. In his answer defendant alleged that plaintiff had full knowledge of this fraud when he purchased the notes.

And plaintiff's reply puts in issue the averments of the answer, except the admissions therein made. And in this situation the question as to where the burden of proof rests is one of vital consequence in the case. Judged alone by the state of the pleadings, it would appear that the burden of proving that plaintiff had knowledge of the infirmity in the note, or took the note in bad faith, would rest upon the defendant. But section 845, Revised Statutes, 1919 (sec. 10029, Rev. Stat. 1909) provides as follows:

"Burden of proof on holder when defective title is shown. Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

In this connection it should be noted that section 841, Revised Statutes 1919 (sec. 10025, Rev. Stat. 1909), provides as follows:

"Title, when defective. The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

It is clear that under section 841, supra, the title of the Night Commander Lighting Company to the notes in suit was shown to be defective, within the meaning thereof, by proof that defendant's signature to the notes was obtained by fraud. Consequently, by the terms of section 845, supra, the burden was placed on the plaintiff "to prove that he or some person under whom he claims acquired the title as holder in due course." A holder

in due course is defined by section 838, Revised Statutes 1919 (sec. 10022, Rev. Stat. 1909) as follows:

"Holder in due course. A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

It cannot be doubted that plaintiff, in his case in chief, adduced substantial evidence tending to show that he was a holder in due course; for plaintiff's testimony tends to show that he purchased the notes (each regular upon its face) before maturity, in good faith, and for value, and that at the time they were negotiated to him he had no notice of any infirmity in the title of the person negotiating them. Plaintiff, appellant here, contends that the defendant adduced no evidence below, of any probative force or value, tending to controvert the evidence for plaintiff which tends to show that he was a holder in due course; and that with the case in this posture it became the duty of the trial court to peremptorily direct a verdict for the plaintiff.

Whether, in a case of this character, a verdict may be directed for a plaintiff, who thus has cast upon him the burden to prove that he is a holder in due course, where he adduces evidence tending to show that he acquired the instrument as a holder in due course, and the defendant adduces nothing having a tendency to contradict or overthrow this, is a question as to which there has been a lack of harmony in the cases in which the question has arisen in this State. In the recent case of German American Bank v. Smith, 208 S. W. 878, this court held that under such circumstances the court should direct a verdict for the plaintiff. In Hill v. Dillon, 176 Mo. App. 192, 161 S. W. 881, the Springfield

Court of Appeals reached a contrary conclusion, applying the rule stated in Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, which is there said to have been established from the time of our earliest reported cases, and which has since been followed in a long line of decisions, viz., "that when either party to a controversy submits testimony (other than written instruments that call for the court's construction of their meaning and import) to sustain his or her burden of proof, the other party, though offering nothing to contradict it, is entitled to have the jury pass upon the whole case and determine the credibility of the witnesses and the weight to be given to their testimony." But in Downs v. Horton, 209 S. W. 595, the Springfield Court of Appeals, disapproving Hill v. Dillon and other cases of like tenor, held that although the note, upon which plaintiff was suing as an endorsee, was admittedly procured by the fraud of the payee's agent, plaintiff, by oral testimony, unimpeached and uncontradicted, could discharge the burden of proof placed upon him by section 845 of the Negotiable Instruments Law, supra, so as to entitle him to a directed verdict. The case was certified to the Supreme Court, where, in an opinion by Commissioner RAGLAND, not as yet reported, the decision of the Springfield Court of Appeals was sustained. The subject is elaborately discussed in those opinions, and the earlier cases considered. It is held that section 845, supra, is merely declaratory of the common-law rule of decision which prevailed in this State prior to the adoption of the Negotiable Instruments Law. But it is held by the Supreme Court in the Downs case, in effect, that what we may term the doctrine of the Gannon case, supra, in respect to the right to direct a verdict for one having the burden of proof, does not here apply, for the reason that the burden placed upon the holder by section 845, supra, is, it is said, not the "burden of proof in its strict sense." but is the burden of producing evidence, at some stage of a trial, to make, or meet, a prima-facie case—sometimes called the "burden of the

evidence"—which may shift during the progress of the case. In this view, when plaintiff made a prima-facie showing that he acquired the title to these notes as a holder in due course, he discharged the burden resting upon him, and it then devolved upon defendant to adduce evidence tending to overcome the prima-facie case thus made; and if defendant failed in this, plaintiff was entitled to a directed verdict.

It is earnestly and ably contended by respondent's learned counsel that there is substantial evidence in this record tending to controvert the prima-facie showing made by plaintiff that he was a holder in due course, so as to make it a question for the jury to say whether plaintiff took the notes without knowledge of the defect or infirmity in the payee's title thereto and in good faith, as was held, by the Springfield Court of Appeals, to be the case in Depres, Bridges & Noel v. Galloway, 224 S. W. 998. We have given very careful consideration to this argument of respondent's counsel, but we are forced to the conclusion that there is here no evidence, of any probative force or value, tending to overthrow the prima-facie showing made by plaintiff in respect to this matter. In this connection it may be noted that section 842, Revised Statutes 1919, (sec. 10026, Rev. Stat. 1909), provides that "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." It is true that Rickey testified, in substance, over objections of plaintiff's counsel, that plaintiff had "collected papers and notes" for the Jackson Brokerage Company and the Night Commander Company; but the fact that plaintiff had at some time collected notes for these companies would not warrant any inference of knowledge on his part of the defect or infirmity in the title to these notes; nor could it be inferred therefrom that plaintiff took the notes under circumstances amounting to bad

faith.  Neither can it be said that the fact that the plaintiff, who was shown to have had previous business dealings with these companies, was familiar with the endorsements upon the paper, knowing such endorsements to be genuine and authorized, sufficed to raise any inference that plaintiff had knowledge of such infirmity or defect in the title to the paper or that he took the same in bad faith.

And obviously the testimony which was introduced, over plaintiff's objections, for the purpose of showing that the checks in evidence, dated November 9, 1914, could not have been deposited in a bank in Jackson, Michigan, and have reached the Chicago Clearing House by ten o'clock on the following morning, if admissible at all, under the circumstances, availed defendant nothing. The uncontradicted evidence for plaintiff is that he paid value for the notes, and that these two cancelled checks, which were introduced in evidence, were, in fact, paid by the bank upon which he drew them, and charged to his account.

It follows, therefore, that though under the evidence in this record defendant was defrauded by the payee's representative, Jones, plaintiff, suing as a holder in due course, was entitled, as a matter of law, to recover on the notes, and the trial court erred in refusing to peremptorily direct a verdict for plaintiff.

In this view it is unnecessary to discuss the numerous other assignments of error made.

The judgment is consequently reversed and the cause remanded. *Becker, J.,* concurs.