CHARLES H. FULLER COMPANY, a Corporation, Respondent, v. ST. LOUIS WHOLESALE DRUG COMPANY, a Corporation, Appellant.*

St. Louis Court of Appeals. Opinion filed March 2, 1926.

1. **WITNESSES: Refreshing Memory: Fixing Date: Letters: Carbon Copy.** In an action on trade acceptances, defended on the ground of fraud in the procurement thereof, where a witness had testified to having dictated a letter acknowledging receipt of the acceptances on a certain date, permitting him to read over a carbon copy of the letter for the purpose of fixing the date *held*, if error, it was not prejudicial to defendant.

2. **———: ———: Memoranda: Carbon Copy of Letter: Competency.** A carbon copy of a letter is competent memoranda for use to refresh the memory of the person dictating the letter and the stenographer who took it regarding the date and other matters therein contained.

3. **EVIDENCE: Depositions: Part Admissible: General Objection to Entire Deposition: Properly Overruled.** Overruling an objection to a deposition which was leveled at the entire deposition as being hearsay and self-serving was proper where any part of the deposition was competent.

4. ———: Stenographer: Testimony Competent to Corroborate Person Dictating as to Date and Fact of Letter. Where an officer of a corporation testified to having dictated a letter acknowledging receipt of trade acceptances on a certain date, the testimony of his stenographer was competent in corroboration to the extent of testifying that on that particular date, the witness had dictated such letter.

5. WITNESSES: Impeachment: Cross-Examination: Depositions: Reading Detached Portions: Improper. Refusal of the trial court to permit the defendant during cross-examination of a witness whose deposition had been taken to read to him certain questions and answers and ask him whether he had been asked such questions and made such answers thereto in the deposition given by him, the evident object of the defendant being thereby to impeach the testimony of the witness, held proper.

6. BILLS AND NOTES: Trade Acceptances: Holder in Due Course: Burden of Proof: Evidence Introduced by Defendant Tending to Prove Fraud in Procurement: Sufficiency of Plaintiff's Evidence. In an action on trade acceptances, where defendant had adduced testimony tending to prove fraud in the procurement thereof, held that the evidence introduced thereafter by plaintiff sufficed to meet the burden of evidence which devolved upon it to disclose the facts and circumstances attending the acquirement of the acceptances.

7. ———: ———: Evidence: Contract Affecting Negotiability of Trade Acceptances Other Than Those in Suit: Properly Excluded. In an action on trade acceptances, a contract between defendant and the drawer to the effect that certain acceptances be nonnegotiable held properly excluded as applying to acceptances other than those in suit.

8. TRIAL PRACTICE: Bills and Notes: Defense of Fraud: Right to Open and Close. The pleading of an affirmative defense does not change the rule that, so long as any part of plaintiff's case is at issue, the plaintiff is entitled to the opening and closing arguments of the case.

9. BILLS AND NOTES: Trade Acceptances: Defense of Fraud in Procurement: Notice of Infirmities: Bad Faith: Evidence: Case for the Jury. In an action on trade acceptances, defended on the ground of fraud in the procurement thereof, evidence held sufficient to go to the jury on the question whether plaintiff, when acquiring such acceptances, did not have knowledge of such facts that the taking of such acceptances amounted to bad faith.

10. INSTRUCTIONS: Bills and Notes: Defense of Fraud in Procurement: Statute: Instruction Covering Entire Case and Omitting De-

fenses: **Erroneous.** In an action on trade acceptances, defended on the ground of fraud in the procurement thereof, where the evidence was sufficient to go to the jury on the question whether the acceptances were acquired by plaintiff after knowledge of such facts as to the taking of such acceptances as amounted to bad faith within section 842, Revised Statutes 1919, the giving of plaintiff's main instruction covering the entire case but omitting such defense, and no other instruction covering it was given either for plaintiff or defendant, *held* prejudicial error.

11. ———: **Instruction Stating Abstract Propositions of Law: Should Not Be Given.** An instruction which is an attempt to state an abstract proposition of law without submitting facts to the jury to enable them to apply the law should not be given.

· *Corpus Juris-Cyc. References; Appeal and Error, 4 C. J., p. 961, n. 34; p. 1036, n. 67. Bills and Notes, 8 C. J., p. 1020, n. 7; p. 1021, n. 9; p. 1061, n. 61. Depositions, 18 C. J., p. 761, n. 12. Trial, 38 Cyc., p. 1304, n. 70; p. 1625, n. 65; p. 1632, n. 10; p. 1634, n. 13, 14. Witnesses, 40 Cyc., p. 2461, n. 58; p. 2719, n. 17 New; p. 2790, n. 43.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. M. Hartmann,* Judge.

REVERSED AND REMANDED.

*S. T. G. Smith* and *Gustave A. Stamm* for appellant.

(1) (a) Declarations, whether written or oral, made by plaintiff to third parties, in his own favor, in the absence of defendant, are hearsay and manifestly self-serving and are therefore inadmissible in evidence. McFarland v. Bishop, 282 Mo. 534; Dietz v. Nix, 202 Mo. App. 639; Hammond v. Beeson, 112 Mo. 190; Horner v. Franklin, 186 Mo. App. 434; Davis v. McClelland, 185 Mo. App. 130; Champion Coated Paper Co. v. Shilkee (Mo. Sup.), 237 S. W. 109, 111. (b) Objections to the admission of a deposition as incompetent and irrelevant because it was hearsay in character and wholly self-serving may be made at the trial in the same manner and with like effect as if such witness were personally pres-

ent. R. S. 1919, sec. 5469. (c) 'Where the plaintiff's direct examination in a deposition is inadmissible because of a hearsay character and self-serving, defendant's cross-examination is not available to plaintiff independently, and defendant's cross-examination of the witness at the taking of the deposition does not waive objections to its competency at the trial. Bentley v. Bentley, 72 Nebr. 803; Bertenshaw v. Laney, 77 Kans. 497; Spear v. Richardson, 37 N. H. 23; Collison v. Smith, 20 Kans. 28; Achilles v. Achilles, 137 Ill. 589; Dietz v. Nix, 202 Mo. App. 639; Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669. (2) (a) Trade acceptances are negotiable instruments and plaintiff, as holder and indorsee thereof, is prima facie presumed to be a holder in due course; however, after the defendant has proven fraud in the procurement thereof, this prima-facie presumption is rebutted and the ''burden of evidence'' is then on plaintiff in order to recover to disclose the facts and circumstances peculiarly within its knowledge attending its purchase of the trade acceptances to show it was a holder in due course, and to show that at the time plaintiff acquired them it had no notice or knowledge of the fraud impeaching their validity and that it was free from bad faith in taking the same. American Trust Co. v. McDermott, 256 S. W. 105; Kincaid v. Estes, 262 S. W. 399; Downs v. Harton, 207 Mo. 414, 230 S. W. 103, 106; Ensign v. Crandall, 207 Mo. App. 211, 231 S. W. 675; R. S. 1919, sec. 845; Ferry v. Woody, 210 Mo. App. 98, 241 S. W. 78; Union Station Bank v. Wangler, 254 S. W. 739; Bank of Hale v. Linneman, 235 S. W. 178; Taylor v. Atlas Security Co., 249 S. W. 746; Leavitt v. Taylor, 163 Mo. 158; Thomas v. Goodrum, 231 S. W. 571. (3) The trial court erred in refusing to give and read to the jury defendant's demurrer to the evidence at the close of plaintiff's case because: (a) The vice-president or general manager of a mercantile company has no implied power, by virtue of his office, to negotiate negotiable instruments held by the

corporation among its assets. Hurlbut v. Gainar, 103 S. W. 409; Smith v. Lawson, 18 West Va. 212; Hodge's Exr. v. First National Bank, 22 Gratt. 51; Dreeben v. First National Bank, 99 S. W. 850; Railway Equipment Co. v. Bank, 89 N. Y. Sup. Ct. (82 Hun.) 8; Blake v. Domestic Mnfg. Co., 38 Atl. Rep. 241; 3 Fletcher Cyclopedia Corporations, sec. 2066; Danglade, etc., Mining Co. v. Mexico, etc., Land Co., 190 S. W. 35; Leigh v. American Brake Beam Co., 205 Ill. 147; Ferguson v. Venice Transp. Co., 79 Mo. App. 352; Emmett v. Bank, 173 N. Y. App. Div. 840, 160 N. Y. Supp. 183; Friedman v. Lesher, 198 Ill. 21; Mechem Agency (2 Ed.), par. 998; Jackson Paper Mfg. Co. v. Comm'l Nat. Bank, 199 Ill. 151; Cann v. Rector, 111 Mo. App. 164; State ex rel. v. Perkins, 90 Mo. App. 603; Integrity M. & M. Co. v. Moore, 130 Mo. App. 627; Milling Co. v. Insurance Co., 105 Mo. App. 146.  (b)  Accordingly plaintiff failed to prove the endorsement to it of the instruments sued on; failing in which, it cannot recover.  Slupsky v. Starr, 223 S. W. 816; R. S. 1919, secs. 838, 842, 845; Atkins v. Brown, 208 S. W. 502; Mayer v. Old, 51 Mo. App. 214; Nance v. Haywood, 183 Mo. App. 217.  (4)  Where the burden of proof is on defendant, it is entitled to open and close the argument to the jury; and the denial of this right constitutes reversible error where the court has abused its discretion in this regard to the injury of defendant.  Lafayette Co. Bank v. Metcalf, 29 Mo. App. 384; Railroad v. Blechle, 234 Mo. 471; Ferguson v. Rittmann, 180 S. W. 1046; Robinson Lumber Co. v. Lansdell, 215 Mo. App. 357, 253 S. W. 24; Dorrell v. Sparks, 142 Mo. App. 460, 127 S. W. 103; Downs v. Horton, 287 Mo. 414, 230 S. W. 103.  (5)  Instructions 2 and 4 given for plaintiff constitute reversible error, because the jury was not instructed to· find that plaintiff had acquired the trade acceptances for value and without knowledge of such facts that its action in taking them amounted to bad faith.  R. S. 1919, secs. 838, 842; Thomas v. Goodrum, 231 S. W. 571;

American Union Trust Co. v. Neverbreak Range Co., 196 Mo. App. 206. (6) The trial court erred in excluding from the evidence the contract of agency between defendant and Reolo, Inc., offered by defendant, because this contract together with the trade acceptances sued on, and which were issued pursuant thereto, comprised one entire contemporaneous written agreement and the testimony of plaintiff's vice-president, J. Howard Start, disclosed that he was familiar with similar contracts and the general form of agency contracts before plaintiff acquired these trade acceptances. Simpson v. Van Laningham, 267 Mo. 286, 183 S. W. 324; Citizens Bank v. Kriegshauser, 211 Mo. App. 33, 244 S. W. 107. (7) Where a party desires to show that the testimony of a witness, as given by deposition, was different from his testimony at the trial, he must have the deposition identified and offer the part of it which he contends contradicts the testimony of the witness at the trial, and then the other party may read the rest of the deposition relating to the same subject-matter; and it is error for the trial court to refuse to permit this except out of the hearing of the jury. Carter v. St. Louis & S. F. Ry. Co., 249 S. W. 124; Littig v. Urbauer-Atwood Heating Co., 237 S. W. 779. (8) Where the title of the payee to negotiable paper is defective, by reason of his own fraud in its procurement, the rule that the endorsee is prima facie its owner and is presumed to have taken it in good faith for value before maturity and without notice does not apply; and the burden rests upon the payee's endorsee to prove himself a holder in due course and to show that he acquired it in good faith without notice of the infirmity in the endorsee's title; and for failure to comply with this rule, instruction No. 1, given for the plaintiff, is erroneous. Hamilton v. Marks, 63 Mo. 167; Klein v. Vette, 167 Mo. 389, 67 S. W. 223; Campbell v. Hoff, 129 Mo. 317, 31 S. W. 603; Johnson v. McMurray, 72 Mo. 278; Henry v. Sneed, 99 Mo. 407, 12 S. W. 663; Thomas v. Goodrum, 231 S. W. 571.

*Foristel, Mudd, Hezel & Habenicht* for respondent.

(1) The true grounds on which hearsay testimony is rejected are that the declarant or affirmant of facts covered by the testimony is not within the pains and penalties of an oath, and not subject to cross-examination. Minea v. Cooperage Co., 179 Mo. App. 705; 2 Jones on Evidence, sec. 297, p. 629. (2) Neither the deposition of Florence Fiset, establishing the writing and mailing of the letter from plaintiff to Reolo, acknowledging the receipt by plaintiff of the acceptances sued on, nor the proof of the date of the letter contravened the rule against the admission of hearsay evidence. Courtney v. Blackwell, 150 Mo. 245; 2 Jones on Evidence, sec. 300, p. 646, et seq. (3) There is a substantial difference between the rulings of a court respectively in the giving and refusing of instructions. To put the trial court in error in refusing an instruction, the complaining party must show that he presented to the court, and the court refused an instruction free from objections in form and substance. Lawbough v. Mining Co., 202 S. W. 617; Thornton v. Stewart, 240 S. W. 502; Higgins v. Pulley, 240 S. W. 252; Hildman v. Am. Mfg. Co., 249 S. W. 99; Kilcoyne v. Metz, 258 S. W. 4. (4) Defendant's refused instructions J and L were objectionable in assuming as a fact that the order referred to was ''false, fraudulent and fictitious,'' instead of requiring the jury to find the fact. Preston v. Mo. Pac. R. R. Co., 239 S. W. 1080, 292 Mo. 440; Willi v. U. R. Co., 224 S. W. 86; Endy v. Lead Co., 220 S. W. 504; Lambert v. Assurance Co., 192 S. W. 95; Ganey v. K. C., 259 Mo. 654; Hunt v. City of St. Louis, 211 S. W. 673, 278 Mo. 213. (5) The court did not err in refusing defendant's request to open and close the argument and for the reasons more fully stated in our argument of the point. McDonald v. Redemeyer, 198 S. W. 483; Smith v. Greenstone, 208 S. W. 628; Reis v. Epperston, 143 Mo. App. 90. The true

rule of the law on the point is as set out in Reis v. Epperston, supra, to-wit, that the plaintiff has the right to open and close: "as long as any part of plaintiff's case is in issue. The injection into the case by the defendants of an affirmative defense does not change the rule. The rule is changed only when plaintiff's whole case is admitted and the defense, by either matter in avoidance or the like, undertakes to meet the admitted case." (6) Plaintiff, upon introducing the acceptances sued on and proving signatures of the drawer, acceptor and endorser of the acceptances, made a prima-facie case of holder in due course and was, on that, entitled to recover, unless defendant then proved that the title of Reolo to the acceptances was "defective" and that the plaintiff had "actual knowledge" of such defective title. R. S. 1919, sec. 842; Downs v. Horton, 230 S. W. 103; Mercantile Trust Company v. Donk, 178 S. W. 113; Payne v. Cummins, 207 Mo. App. 64.

BECKER, J.—Plaintiff obtained judgment below on two trade acceptances and the defendant appeals.

It appears that the plaintiff company is an advertising agency and as such had a contract with a drug manufacturing company known as Reolo, Inc., for the placing of its advertising. The defendant, St. Louis Wholesale Drug Company, had a contract as a distributing agent in certain territory for the goods manufactured by Reolo, Inc. The defendant accepted two bills of exchange drawn on it by Reolo, Inc., each of said bills of exchange being dated February 10, 1921, and were due four months after date, one in the sum of $2640 and the other for $3000. According to plaintiff's petition it obtained the said two acceptances from Reolo, Inc., for value before maturity in due course.

The defendant's answer, besides a general denial, was that the trade acceptances in question had been obtained by Reolo, Inc., through fraud; namely, by fraudu-

lent statement to the defendant that Reolo, Inc., had an order from the American Wholesale Drug Company of Denver, Colorado, within the distributing territory of defendant, for $8640 worth of merchandise, which it, the Reolo Company, would ship direct from its plant at Cleveland, Ohio, and charge to the St. Louis Wholesale Drug Company, defendant herein, and that solely in consideration of such false and fraudulent statements by Reolo, Inc., and its agreement to ship said $8640 worth of merchandise to the American Wholesale Drug Company at Denver, Colorado, did the defendant accept three trade acceptances dated February 10, 1921, one being for $2640 and the others being for $3000 each, the two trade acceptances sued on by plaintiff herein being two of said trade acceptances so given.

The defendant's answer further sets up that on February 15, 1921, and prior to the date upon which the plaintiff had received the acceptances herein sued upon, it had fully informed the plaintiff company that the said trade acceptances were obtained by the false and fraudulent representations set forth above; and further that said trade acceptances had been obtained without consideration.

The reply was conventional.

For the purposes of this opinion it is sufficient to state that at the trial of the case the plaintiff made out a prima-facie case and that thereupon the defendant adduced testimony tending to show the fraud and false representations on the part of Reolo, Inc., in obtaining the trade acceptances as set out in defendant's answer. In addition, to support the charge that plaintiff had actual knowledge of the fraud, or knowledge of such facts as to show bad faith on the part of plaintiff in taking the acceptances, the defendant adduced O. J. Cloughly as a witness who testified he was treasurer and general manager of the defendant company, and that a few days after the defendant company had entered into its agency

contract with Reolo, Inc., namely, on January 30, 1921, he visited plaintiff's office in Chicago and had a conference with one J. Howard Start, vice-president of the plaintiff company; was told by Start that he was familiar with Reolo, Inc., its method of doing business, and knew the general form of their agency contracts; that Reolo, Inc., had made great progress and that it would cost another concern $500,000 to get where Reolo, Inc., was, and that he was well pleased and satisfied with having Reolo, Inc., as a client and that it was all right financially and was assured by him that he had made a wonderful contract for the defendant by securing a Reolo agency.

Witness Cloughly further testified that on February 15, 1921, J. Howard Start, vice-president of the plaintiff company, made a special trip to St. Louis to confer with him; that he met Start at the depot and Start asked him: "How are you getting along with Reolo?" I said, "I am not getting along." He said, "what do you mean by not getting along?" I said, "that I had just learned some information a day or two before that rather confirmed my suspicions that the Reolo, Inc., company were a bunch of crooks and that all the orders Smith had been giving me were fraudulent orders and that I was going to have nothing more to do with them." He said, "where did you get your information?" I told him Frank Rapp came in the previous Saturday and told me that he had just left Merrell and advised me to watch this man Smith, that Merrell were all up in the air and they made the remark if things weren't straightened out satisfactorily to them that somebody would go to the penitentiary, that they had given some trade acceptances and they found out that the orders were fraudulent. Start then said, "I have come to the same conclusion— they are a bunch of crooks in my opinion and I am going back to Chicago and I am going to sever all connections with them; going to have nothing more to do with them." Cloughly further testified that during the course of the conversation, which lasted some two hours, he asked

Start: "Have you any of our trade acceptances?" He said, "no, sir." I said, "none of them, I mean the ones I gave on the 22nd or the ones I gave on the 10th," and he said, "none of them." I said, "Mr. Start I am glad you haven't because you treated me pretty nice when I was in Chicago a few days ago, and I want you to know we will never pay one of these acceptances because they were gotten fraudulently; we received nothing for them and I am glad you haven't got them, because we will not pay them."

In addition to this the defendant in connection with the deposition of Glenn F. Felger, who was auditor and assistant treasurer of Reolo, Inc., and was in charge of the books of Reolo, Inc., from August, 1920, to May, 1921, introduced in evidence the general ledger of Reolo, Inc., which shows that on February 22, 1921, Reolo, Inc., charged on its books to the plaintiff company the two trade acceptances herein sued on.

The plaintiff in rebuttal adduced testimony tending to prove that they had received the acceptances for value before maturity in due course on February 12, 1921; that at the time they had no knowledge of any facts concerning any alleged fraud in the procurement of said acceptances from the said defendant company.

J. Howard Start testified for the plaintiff, and during the course of his testimony specifically denied that Cloughly in the conference had at St. Louis on February 15, 1921, had told him anything with reference to the alleged fraudulent procurement of the acceptances in question, and that if Cloughly did in fact ask him whether the plaintiff had any of the defendant's trade acceptances and he replied that they did not have, that he was then merely stating that at that time he did not know that they had any, since trade acceptances might well pass through his hands or be accepted by the plaintiff company without his having direct knowledge thereof.

The defendant in surrebuttal read in evidence the deposition of J. Howard Start, certain portions of which it is urged by defendant are in conflict with the testimony given by Start at the trial. Such portions of the deposition as are material will be set out in the course of the opinion under the assignment of error to which they are germane.

It is here urged on behalf of the defendant below that the court erred in permitting the plaintiff to introduce in evidence a letter purported to have been written by plaintiff to Reolo, Inc., dated February 12, 1921, which letter acknowledges receipt of the two acceptances herein sued on. In support of this it is argued that since the letter in question purports to have been written by the plaintiff to Reolo, Inc., without any knowledge thereof on the part of the defendant, the letter is purely hearsay and is manifestly a self-serving statement and is therefore inadmissible in evidence.

An examination of the record discloses however that the plaintiff was not permitted to read the letter in evidence, as will appear from the following resume of what occurred at the trial with reference to plaintiff's offer of the letter in question.

James T. Sweeney, a witness for plaintiff, testified that he was cashier for the plaintiff company and that plaintiff had received the two trade acceptances herein sued on, on or about February 12, 1921, and that plaintiff had sent a letter to Reolo, Inc., acknowledging receipt of these acceptances and placed them to the credit of Reolo, Inc. It was at this juncture that the plaintiff offered in evidence a carbon copy of a letter which the witness testified he had written to Reolo, Inc., which letter reads as follows:

"Feb. 12, 1921.

"Reolo, Inc.,
"1232-9 Superior Avenue,
"Cleveland, Ohio.
"Gentlemen :—

"We herewith acknowledge receipt of the following Acceptances signed by the St. Louis Wholesale Drug Company, St. Louis, Missouri.

"Dated, Feb. 10, 1920,      $3000, maturing June 10.
"Dated, Feb. 10, 1920,      $2640, maturing June 10.

"Thanking you for the above, we remain,

"Yours very truly,

"CHARLES H. FULLER Co.

J.T.S:F.F.                                    "Asst. Treas."

Counsel for defendant objected to the introduction of the letter on the ground that, "it is entirely hearsay testimony. . . ." The court then asked: "I take it it is to fix the date?" Counsel for defendant: "I object to it for any purpose as being hearsay. . . ." Upon this objection being overruled counsel for defendant stated. "The point is he cannot refresh his memory by reading a letter which is self-serving in its character." The court again stated that it would admit the letter for the purpose of fixing the date only. Counsel for defendant thereupon stated: "We object to it for any purpose; if they offer it the letter is offered and we object to it for any purpose." THE COURT: "The court will permit that letter to be offered for the purpose of fixing the time." Counsel for defendant: "The point we make is by limiting the purpose and getting that letter before the jury you are getting evidence before the jury that is not proper evidence and therefore we object to the letter for any purpose whatsoever." THE COURT: "I suggest counsel merely read the date of that letter so far as to conform to the court's ruling, otherwise the letter might be hearsay and self-serving and not binding. The purpose is to fix the date and you may do so." Counsel for defendant: "Then your honor overrules the objection on that point?" THE COURT: "Yes."

Thereupon the witness was questioned with reference to the date of the letter in question, to which he answered that the date thereof was "February 12, 1921," and that it was dictated by him.

Whether the letter itself was competent or not we need not determine since under the record before us we rule that introducing merely the date of the letter, even if this were held to be error, was not error prejudicial to the defendant. Our ruling is based upon the fact that the witness Sweeney had already testified that the acceptances in question had been received by plaintiff on or about February 12, 1921, and that he had on that day written a letter of acknowledgment thereof to Reolo, Inc. Furthermore, the record discloses that the deposition of Miss Fiset was read in evidence in which she corroborated Sweeney to the effect that she, as one of the stenographers for plaintiff company, took, dictation from Sweeney, and that on February 12, 1921, Sweeney dictated a letter of acknowledgment of the acceptances to Reolo, Inc.

In this connection it must be borne in mind that the letter was competent memoranda for witnesses Sweeney and Fiset to use for refreshing their memories regarding the date and other matters therein contained. [Shepard v. People's Storage & Transfer Co., (Mo. App.), 243 S. W. 193, l. c. 195; Traber v. Hicks, 131 Mo. 180, l. c. 186, 32 S. W. 1145; State v. Patton, 255 Mo. 245, l. c. 254-5, 164 S. W. 223.

Error is assigned in that the deposition of Miss Fiset was read in evidence at the trial over the objection of the defendant that, "it all pertains to self-serving statements and hearsay and all based on hearsay testimony and for that reason none of the deposition is admissible. . . ." This objection was leveled at the entire deposition so that if any part of it can be held competent the objection was properly overruled.

An examination of the deposition shows that the witness testified that she had been in the employ of plaintiff for over two years and that her duties are to take dictation from Sweeney and others connected with the defendant company, and that she identified a carbon copy of a letter dated February 12, 1921, as having been

written by her and dictated by Mr. Sweeney and by referring to the letter the witness said that she had written it on February 12, and that after writing it she had taken it to Mr. Sweeney's desk for signature, and thereafter the letter was brought back to her to be folded and sent out. No reference whatsoever was made to the contents of the letter.

Since Sweeney had testified that he had acknowledged receipt of the acceptances on February 12, 1921, a fact concerning which he was clearly competent to testify, then certainly the testimony of the witness Fiset is competent in corroboration to the extent of testifying that on that particular day the witness Sweeney did dictate a letter of acknowledgment, not for the purpose of proving the contents of the letter so written, but to prove the date on which such a letter had been dictated by Sweeney.

Nor was there any error in refusing to permit the defendant, during cross-examination of the witness Sweeney, to read him certain questions and answers and ask him whether he had been asked such questions and made such answers thereto in a deposition given by him, the evident object of the defendant being thereby to impeach the testimony of the witness. Upon objection being offered to this method of cross-examination the court, in sustaining the objection, stated that "you have to offer the deposition or any part of it. that you think will impeach the witness' testimony and make out your case." Counsel for defendant: "Your honor holds that I cannot ask this witness whether he has made statements at the taking of a deposition which may be contrary to those he made on the stand?" THE COURT: "You cannot ask isolated questions taken from the deposition, the authorities have so held." Counsel for defendant: "We will offer the whole deposition in evidence and I will then examine him from such points of it as I see fit." THE COURT: "That is the very point that the courts have

made. You cannot ask isolated questions even for the purpose of impeachment.'' The record then discloses that out of the hearing of the jury, in order to get the questions asked and answers made into the record which appear in the deposition which the defendant desired to ask the witness about, the court permitted counsel for defendant to interrogate the witness along said lines. At the close thereof the jury were brought back and the case proceeded.

The action of the trial court in its ruling on the objection to the attempted method of cross-examining the witness is sustained by abundant authority. Our Supreme Court in the case of Littig v. Urbauer-Atwood Heating Co., 237 S. W. 799, with reference to the question before us, held that,

''Where a written statement or deposition signed by the witness is offered in evidence, counsel have no legal right to read to a witness on the stand detached portions of said statement or deposition, for the purpose of impeaching him, but the statement or deposition should be shown to the witness, and if his signature thereto is admitted to be genuine, the whole statement or deposition, as far as it is competent, must be offered in evidence, and speaks for itself. If a part of the instrument does not bear upon the question under consideration, then the impeaching party must read to the jury all that the instrument contains in reference to the impeaching matter, and opposing counsel may then read the remainder of the instrument, if any, that is relevant and competent.

''The rule above indicated is fair to the witness, and should be observed in the trial of cases. If a witness has testified at the trial, and is then confronted on cross-examination with a written instrument signed by him, which is read to the jury, the latter can then determine, in passing upon his credibility, whether his written statement is in conflict with his testimony given at

the trial.  We have, in no uncertain terms, condemned the practice, that sometimes finds its way into court, of counsel, on cross-examination, reading a detached portion of the deposition or instrument, and then asking the witness, whether he made such a statement, etc.  And in some cases before us counsel, after intimating in above manner that the witness is telling a different story from that contained in the deposition, closes the case without offering or reading the deposition to the jury, and thereby takes an undue advantage of the witness.  The rule of procedure, as above indicated, has been long recognized as proper in this state, and should be followed by the trial courts.''

To the same effect in the recent case of Carter v. R. R. Co., (Mo. App.), 249 S. W. 124, l. c. 126.

''The rule is now firmly established in this State that if a party wishes to show that a witness testified differently by deposition from his testimony at the trial, he must identify the deposition, and then offer the part of it that he contends contradicts the testimony of the witness at the trial.  He should not be permitted to ask the witness if he did not testify to certain facts in his deposition, and then afterward offer the deposition or not, as he chooses.  Such procedure is now held to be unfair to the witness, and not permissible.  After identifying the deposition, he may offer such part as he desires, and then the other party should be permitted to read all the deposition that relates to the same thing to show that there is no real contradiction, and there the matter should end.  [Littig v. Urbauer-Atwood Heating Co., — Mo. —, 237 S. W. 779, 785.]''

What we have held with reference to the testimony of the witness Sweeney concerning the receipt of the acceptances on or about February 12th, and the dictation of his letter on February 12, 1921, acknowledging receipt of said acceptances to the Reolo, Inc., and a reading of the deposition of the witness Florence Fiset to the effect that Sweeney did in fact dictate to her on February 12,

1921, such letter of acknowledgment of the receipt of said acceptances, disposes of the assignment of error that the plaintiff wholly failed to meet the burden of evidence which devolved upon it to disclose the facts and circumstances attending the acquirement of these acceptances after the defendant had adduced its testimony tending to prove fraud in the procurement of said acceptances from the said defendant by Reolo, Inc.

The point is sought to be made that the court committed error in refusing to permit the defendant to introduce in evidence the written contract of agency entered into by the said defendant Reolo, Inc., by which the defendant became the agent for certain territory therein designated for Reolo products. It is urged that the contract was material in that all trade acceptances issued by the defendant, including those which are involved in this suit, were accepted and issued by the defendant pursuant to that contract of agency and that it was stipulated in said contract that such trade acceptances were not to be negotiated by Reolo, Inc., and that such agency contract specifically provides for the renewal of defendant's trade acceptances at maturity if the goods for which the acceptances were given had not then actually been shipped. This point is without merit.

A reading of the contract itself which appears in the record, disposes of this contention. The contract which is in the form of a letter written by the defendant to Reolo, Inc., and accepted by them, bears date of January 22, 1921, and shows that the defendant enclosed therein their customers' acceptances aggregating $9120, and that the agreement to renew any acceptances upon certain conditions therein named applies solely to the acceptances which make up the aggregate $9120, and there is no contention that either of the acceptances herein sued upon were among those enclosed with the contract, and which made up the aggregate total above mentioned.

Complaint is made of the refusal to permit the defendant to have the opening and closing arguments to

the jury. The record discloses that such request was made "for the reason that under the instructions and under the law, the burden is on the defendant, and therefore they are entitled to the opening and closing."

In considering this point we first note the pleadings which show that defendant's answer contained among the defenses pleaded, that of a general denial. It is true that the defendant's answer also sets up the affirmative defense of fraud on the part of Reolo, Inc., in obtaining the acceptances herein sued upon from the defendant. The pleading, however, of an affirmative defense does not change the rule that so long as any part of plaintiff's case is in issue, the plaintiff is entitled to the opening and closing arguments in the case. As was said in Reis v. Epperson, et al., 143 Mo. App. 90, 122 S. W. 353, "the rule is changed only when plaintiff's whole case is admitted and the defense, by new matter in evidence or the like, undertakes to meet the admitted case." [See, also, McDonald v. Redemeyer, (Mo. App.), 198 S. W. 483; Smith v. Greenstone, (Mo. App.), 208 S. W. 628.] In light of this situation we rule that the court properly denied the defendant the right to the opening and closing arguments.

It is seriously contended that since plaintiff's main instruction covers the entire case and directs a verdict upon plaintiff's theory of the case but omits therefrom a part of the defendant's affirmative defense of fraud, and no other instruction covered such portion of the defense of fraud, that the giving of said instruction for the plaintiff was error prejudicial to the defendant. After a careful consideration we have come to the conclusion that under the facts in this case the point is well taken.

The plaintiff's petition was in two counts and therefore two instructions, differing only in the amount sought to be recovered in each of the counts, are subject to like criticism. We set forth therefore but one of the instructions.

"The court instructs the jury that the first count of this suit is brought on a trade acceptance or bill of exchange dated February 10, 1921, and being in the sum of two thousand six hundred forty dollars ($2,640) drawn by Reolo, Inc., on the St. Louis Wholesale Drug Company and accepted by said last-mentioned company.

"The court further instructs you that if you find from the evidence that the plaintiff acquired said trade acceptance or bill of exchange from said Reolo, Inc., before its maturity, and that plaintiff is now the owner and holder thereof, then you are instructed that plaintiff is the holder of the said acceptance or bill of exchange in due course, and your verdict shall be for the plaintiff, unless it further appears from the evidence that at the time plaintiff acquired said acceptance or bill of exchange it had actual knowledge that Reolo, Inc., had perpetrated a fraud upon defendant, St. Louis Wholesale Drug Company, in that the Reolo, Inc., falsely stated or represented to the defendant, St. Louis Wholesale Drug Company, that it had an order from the American Wholesale Drug Company of Denver, Colorado.

"The court further instructs the jury that the burden of proving that plaintiff had actual notice of any such fraud at the time it acquired said acceptance or bill of exchange, if you find from the evidence that any such fraud has been shown, is upon the defendant, and unless you find from the evidence that there was such fraud and that the plaintiff at the time of acquiring said bill of exchange or trade acceptance had actual knowledge thereof, then your verdict on the first count of said petition must be for the plaintiff and against the defendant."

Under section 842, Revised Statutes of Missouri, 1919, it is provided that, "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity

or defect, *or knowledge of such facts that his action in taking the instrument amounted to bad faith.*" It is at once apparent that whilst the instruction takes cognizance of the defense of fraud, it is solely predicated upon a finding of the jury that plaintiff had actual knowledge that Reolo, Inc., had perpetrated a fraud upon the defendant in falsely representing that it had an order from the American Wholesale Drug Company of Denver, Colorado, but the instruction does not include as an equally valid defense the other clause provided for in section 842, namely, that if the jury believe from the evidence that the plaintiff had *"knowledge of such facts that its action in taking the acceptances amounted to bad faith,"* then it should find for defendant. Furthermore an instruction covering the identical defense so omitted from plaintiff's main instruction was offered by the defendant and refused by the court, and whether the refusing of the particular instruction asked by defendant would by itself have been held error, is immaterial when considering the point before us, for it is admitted that no instruction was given covering the omitted matter either for plaintiff or defendant. It is also to be noted that the last clause in plaintiff's said instruction specifically told the jury that the burden of proving that the plaintiff had *actual notice of any such fraud at the time it acquired said acceptances, was upon the defendant, and further told the jury that unless they did find from the evidence that there was such fraud and that the plaintiff at the time of acquiring said bill of exchange had actual knowledge thereof,* the verdict must be for the plaintiff and against the defendant. Thus again there was omitted the statutory defense of notice of infirmity if the jury believed from the evidence that the plaintiff *had "knowledge of such facts that its action in taking the instrument amounted to bad faith."*

As this court ruled in the case of Citizens Bank of Edina v. Kriegshauser, 211 Mo. App. 33, 1. c. 43, 244 S. W. 107:

"It is true that to constitute notice of an infirmity in a negotiable instrument or defect in the title of the person negotiating it, it must appear that the person to whom it is negotiated had actual knowledge of such infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith. [Sec. 842, R. S. 1919.] Neither suspicion nor negligence will suffice to affect the purchaser's title. However, it is not essential that proof of such knowledge be made by direct and positive testimony, but it may be shown by facts and circumstances in evidence which legitimately afford an inference that the holder of the paper took it with knowledge of such facts as to constitute notice under the statute."

That this point is material is evident from the fact that the record discloses there is evidence from which the jury could have come to the conclusion that Reolo, Inc., did not send the acceptances in question to the plaintiff until February 22, 1921, for the defendant introduced in evidence the ledger of Reolo, Inc., which showed entries of two acceptances in like amount to those sued on as having been debited to the plaintiff company's account on that date; there was also the testimony of Sweeney, cashier for the plaintiff company, that the date on which the first of the acceptances was sent for discount by the plaintiff, was on February 23, 1921. If then there was evidence which would support a finding by the jury that the plaintiff company had in fact not received the acceptances until February 22nd, or thereafter, then what took place in the conference in St. Louis, held February 15, 1921, between Start of the plaintiff company, and Cloughly of the defendant company, would become vital in the case on the question as to whether defendant company at the time they received the acceptances in question had *"knowledge of such facts that its action in taking the acceptances amounted to bad faith."* And while it is true that the witness Start for the plaintiff company specifically denied that in the conference he

had with Cloughly of the defendant company in St. Louis on February 15, 1921, that Cloughly told him anything with reference to any alleged fraud having been practiced by Reolo, Inc., upon defendant in obtaining any of its trade acceptances, yet in rebuttal the defendant introduced in evidence a deposition of the said Start in which Start admitted having made a special trip on February 15, 1921, to St. Louis, and had had a conference with Cloughly of the defendant company, and that the Reolo, Inc's., business was at that time discussed and that it was a remark made by Cloughly to him which led him to believe that A. B. Smith of Reolo, Inc., was a liar and that he did not want any further business connections with Smith, and that he (Start) then went back to Chicago and wrote a letter dated February 18th to Smith at Denver, Colorado, in which he told him that he wanted Smith at his earliest convenience to make arrangements to have some other agency place Reolo's advertisement; further, that though he could not recall Cloughly's remark, but something Cloughly said "threw doubt in his mind," and that "the only fake order witness (Start) knew about was that Cloughly at the St. Louis conference intimated that an order was fictitious. God gave me a brain and I used it." Further in the deposition the witness testified that A. B. Smith and Walker of Reolo, Inc., had a conference with him in Chicago within a week or ten days after he had written the letter of February 18, 1921, relative to the Reolo, Inc., getting some other agency to place their advertisement, and as to that conference the witness testified: "I told them I though they were 'kiting' their trade acceptances and as soon as I discovered that, good-bye, that letter went. That information came, you may gather, in talking to this St. Louis Wholesale Drug Company man in the few minutes I talked about this business—that is how I found out about the outlook of the thing." And since from the evidence adduced with reference to the conver-

sation had between Cloughly and Start at this conference on February 15th, the jury might conclude that though Cloughly at that time did not himself have *actual proof* that Reolo, Inc., had in fact no order for goods from the American Wholesale Drug Company of Denver, Colorado, as defendant alleges Reolo, Inc., represented at the time the defendant gave Reolo, Inc., the acceptances herein sued on, yet if the jury believed that Cloughly told Start of all the facts and circumstances which Cloughly testified he told Start in that conference relative to the manner in, and the representations upon which the acceptances were obtained from the defendant company by Reolo, Inc., and the information relative to the untruth of such representations which defendant had learned since the issuance of the acceptances, and that the defendant felt they had been obtained from it by fraud and would therefore refuse to pay any of such acceptances when they fell due, then the jury might have come to the conclusion that though plaintiff did not have *actual knowledge* of the particular fraud at the time they took the acceptances in question, yet that the plaintiff was in possession of "knowledge of such facts that plaintiff's action in taking the acceptances amounted to bad faith." [Citizens Bank of Edina v. Kriegshauser, 211 Mo. App. 33, 1. c. 43, 244 S. W. 107; Downs v. Horton, 287 Mo. 414, 230 S. W. 103; Goodin v. Buhler, 65 Mo. App. 288, 1. c. 291; Russell v. Wyant, 214 Mo. App. 377, 1. c. 390, 253 S. W. 790; Ensign & Co. v. Crandall, 207 Mo. App. 211, 1. c. 222-3, 231 S. W. 675.] In this connection see, also, Thomas v. Goodrum, (Mo.), 231 S. W. 571, wherein our Supreme Court in an opinion en banc with reference to our present Negotiable Instrument Act says:

"No words could be selected to express more plainly the rule that, if the title of the payee is defective by reason of his own fraud, the burden would rest upon his indorsee to prove that he himself was a holder in due course; that is to say, that he acquired it in good faith

without notice of the infirmity of the indorser's title. The words 'in due course' in every section of the act in which they are used imply *in the holder his own good faith in the acquisition of the instrument as well as his want of notice of any infirmity which would by reason of such notice affect the instrument in his hands.*"

In this state of the record we feel that it was prejudicial error to have given plaintiff's main instruction covering the entire case, omitting therefrom that portion of section 842 of the statutes hereinabove noted where the record contains evidence to support such defense, and where no other instruction covering the said defense was given either for plaintiff or defendant.

In event of another trial the court should not give plaintiff's instruction numbered one herein which is an attempt to state an abstract proposition of law without submitting facts to the jury to enable them to apply the law. [Edwards v. Lee, 147 Mo. App. 38, l. c. 47, 126 S. W. 194; Moran v. R. R. Co., (Mo. App.), 255 S. W. 331, l. c. 335; Borowski v. Loose-Wiles Biscuit Co., (Mo. App.), 229 S. W. 424, l. c. 428.]

It is unnecessary to discuss other errors assigned. For the reasons noted the judgment is reversed and the cause remanded. *Daues, P. J.,* and *Nipper, J.,* concur.