Jim McNEAL, Plaintiff-Respondent,

v.

**MANCHESTER INSURANCE & INDEMNITY COMPANY, Defendant-Appellant.**

No. 37140.

Missouri Court of Appeals, St. Louis District, Division Three.

July 6, 1976.

Motion for Rehearing or Transfer Denied Aug. 18, 1976.

114

Mark I. Bronson, Goldenhersh & Newman, St. Louis, for defendant-appellant.

Howard, Edwards & Singer, Raymond Howard, Jr., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

This is an appeal by defendant-appellant, Manchester Insurance & Indemnity Company (Manchester), from a judgment of the circuit court of the City of St. Louis awarding the plaintiff-respondent, Jim McNeal, $1,500.00 in his equitable garnishment action against Manchester. §§ 379.195, 379.-200, RSMo 1969. Manchester raises several points urging reversal. For reasons hereinafter stated, we affirm.

The events leading to this litigation began as a result of an automobile collision on October 11, 1968, between plaintiff-McNeal and Mr. Lee Atkinson at the intersection of Page and Montclair avenues in the City of St. Louis. McNeal was insured by State Farm Insurance Co., and Atkinson was insured by Manchester. On October 23, 1968, Mr. McNeal's attorney forwarded a lien letter to Mr. Atkinson, and on November 29, 1968, he also forwarded a lien letter to Manchester. On January 16, 1969, McNeal filed suit against Atkinson in the magistrate court of the City of St. Louis seeking damages for personal injuries in the sum of $1,500.00. Default judgment was rendered against Atkinson for that amount on November 4, 1969.

On October 28, 1970, McNeal's insurance company, State Farm, as subrogee, filed its action against Atkinson in the amount of $163.91 for property damage to McNeal's automobile. Summons was served in this suit upon Atkinson which was forwarded to, or at least received by, Manchester. This claim was apparently settled.

More than thirty days having elapsed since the rendition of the default judgment in favor of McNeal for personal injuries

against Atkinson, and after informing Manchester of the default judgment on November 19, 1969, Mr. McNeal filed his petition in the City of St. Louis for equitable garnishment against Atkinson's carrier, Manchester Insurance. §§ 379.195, 379.200. McNeal prayed judgment in the amount of the default judgment together with costs.

Prior to trial, Manchester moved to dismiss on the ground of lack of venue, since its principal place of business was St. Louis County and it had no place of business, or any employees, in the City. The motion was overruled, pleadings were filed, and the cause proceeded to trial. Trial was held in March, 1975.

The principal dispute at the trial was whether Atkinson received any summons in the personal injury action filed by McNeal and whether Atkinson complied with certain conditions of the insurance contract by forwarding the summons to Manchester. The testimony is often confusing and contradictory, and there was no clear-cut testimony by any witness whether Atkinson received any summons or forwarded it to Manchester or whether Manchester, in fact, did not receive it. Only three witnesses testified—Atkinson and two employees of Manchester.

On direct and cross-examination, Mr. Atkinson denied receiving any summons and denied that a sheriff brought a summons, but testified that his insurance company got in touch with him after he reported the accident, and he mailed forms to it. The thrust of his testimony on direct was that he did not remember receiving a summons but he sent quite a few papers to the company.[1] Mr. Atkinson definitely remembered appearing in court "one time" be-

---

1. ". . . I don't exactly remember whether I received a summons or not, but I don't think I did," or ". . . I could have gotten a summons. In any event I did appear in court, but I have forgotten." ". . . I can't remember back that far, I really don't [recall]." ". . . They could have brought me one, or my insurance company could have called and told me." ". . . I sent quite a few papers to the insurance company; it might have been some-thing resembling that [the summons in the property damage suit]. . . ." "Like I said it was several different types of papers in this. Like I said I just do not remember." ". . . Like I told you before I don't remember all of this stuff. . . ." But ". . . anything you got pertaining to this accident . . . you forwarded them to Mr. Crump, right? A That's what he told me to do."

cause the insurance company lawyers "represented me," but this was explained that "Mr. McNeal's insurance company was suing my insurance company." He "imagine[d] it [the suit] was the same year of the accident. . . ." In his relations with Manchester, he dealt with an insurance adjuster—a Mr. Crump. When asked if he cooperated with Manchester, his answer was positive—"I sure did." He recalled speaking with Mr. Crump on the phone "[a]bout receiving papers" and "reported everything to him," and recalled Mr. Crump taking a statement of him over the telephone. He was not aware that any default judgment had been taken against him. Mr. Atkinson, in questioning by the court near the end of the hearing, testified that he lived at 1325 Semple Avenue and that his sister Lois lived downstairs in a two-family flat. An examination of the magistrate file showed that a summons was left at his usual place of abode by leaving a summons with Lois on August 29, 1969. Mr. Atkinson stated, "If it was received I sent it to the insurance company." But "[i]t's been so long ago I don't recall any of it." He insisted that ". . . everything I got I sent to the company, what it was pertaining to I don't remember".

During the hearing, two employees of Manchester testified—Mr. William C. Blackwell, vice president in charge of claims, and Gerald C. Swinfard, claims supervisor.

Mr. Blackwell was claims supervisor from 1968 to 1970, but he did not personally handle the McNeal claim. He admitted that as a part of the Atkinson file there were present the two lien letters in 1968 from McNeal's attorney and the letter dated November 19, 1969 informing Manchester that a default judgment had been rendered against Atkinson in the amount of $1,500.00. Also as part of the file he admitted receiving a "memo" from Mr. Swinfard advising that he had received notification of the default judgment and that the memo indicated that after contact with Atkinson, he "emphatically stated that he had not received anything other than the actual [lien] letter which he originally turned in . . . ." Mr. Blackwell indicated that the company received notice "regarding the default" in November, 1969. When the notice and Swinfard's memo were received, Mr. Blackwell forwarded the information to the company's attorneys.

A facsimile of the insurance policy with Atkinson was introduced, the duplicate of the original policy having been destroyed.[2] The liability policy contained certain standard conditions[3] relating to forwarding suit papers and cooperation of the insured. The policy also contained a provision that no

2. The underwriting file was also "unavailable." Mr. Blackwell admitted that "occasionally" suit papers come into the underwriting department, "but they are sent to us [claims department] right away."

3. Condition No. 1 was a "*Notice of Accident.*" Condition No. 2 provides: "*Notice of Claim or Suit* . . . If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

Condition No. 7 provides: "*Action Against Company* . . . No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judg-

ment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."

Condition No. 18 provides: "*Assistance and Cooperation of the Insured* . . . The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

action shall lie unless, "as a condition precedent thereto," the insured shall fully comply with all the terms of the policy. Mr. Blackwell admitted that Mr. Atkinson forwarded suit papers in the State Farm action and that a judgment was obtained which was paid by Manchester. He also admitted that to the best of his recollection in "this particular suit," the company received the cooperation of Mr. Atkinson. The State Farm action was filed a year after the default judgment was obtained against Atkinson—October, 1970. As far as Mr. Blackwell knew, the only "notice ever received relative to the suit by Mr. McNeal was the letter" informing the company that default had been entered and which sought satisfaction thereof. Counsel for Manchester sought to question Mr. Blackwell concerning the effect of not receiving a notice of suit and the prejudice to the company in not receiving notice of suit. An objection was sustained, and an offer of proof was made.

On cross-examination he admitted that the company received the State Farm summons and that it received a judgment; that the underwriting file was sought to be obtained, but "[t]he underwriter was unable to find the file"; and that he doubted a summons could be sent to the underwriter department.

A transcript of a telephone statement taken on July 29, 1970 between Mr. Crump and Mr. Atkinson was introduced, in which Mr. Atkinson denied that he or his sister received any "law suit papers."

Mr. Swinfard, the claims supervisor who handled the case, testified. Mr. Crump was his supervisor. Mr. Swinfard handled the file until April, 1970, when he left the company, at which time Mr. Crump "took the file over and handled it." Swinfard admitted "participat[ing] in the adjustment of an accident involving Mr. Jim McNeal and . . . Lee Atkinson," and receiving the letter of November 19, 1969, which was the first time he became aware of any suit by Mr. McNeal. He contacted Atkinson, who told him that the only letter he ever received was the lien letter, and no one in the house had received any papers. He then wrote the memo to Mr. Blackwell. He was not familiar with the State Farm suit because he had already left the company. He didn't see how it was possible that Atkinson could have sent any summons; because he hadn't lost anything before but "I don't mean something that would be lost that was never found."

Mr. Atkinson was recalled. He was informed about the magistrate file showing a summons received by his sister, Lois; he was also asked whether he received an "alias summons special" in the State Farm case. He did not recall receiving anything from State Farm. "Like I say everything I got I sent to the company, what it was pertaining to I don't remember."

At the end of the hearing, the court continued the cause for five days in order to locate Mr. Crump. Mr. Crump did not testify, and on April 17, 1975, the court entered its findings of fact, conclusions of law and order. The court found that (1) a policy of insurance was in effect on October 11, 1968, insuring Atkinson against liability, (2) State Farm filed a claim against Atkinson, (3) Atkinson was served in that suit and testified, (4) McNeal filed suit against Atkinson in January, 1969 for personal injuries, that he was served on August 29, 1969, and default judgment was entered on November 4, 1969, in the sum of $1,500 and costs, (5) Atkinson dealt with an investigator [Crump] who was not produced to testify, and part of the defendant's file could not be found, (6) the insured, Atkinson, cooperated with the agent of defendant, (7) the default judgment has become final and defendant has not satisfied the judgment, and (8) the defendant received a lien letter from McNeal's attorney.

Based on these findings of fact, the court concluded that (1) defendant had in effect a policy of insurance requiring it to defend and pay on behalf of Atkinson all sums which the insured became legally obligated to pay, (2) the insured, Atkinson, cooperated with the defendant insurance company,

and (3) the insured, Atkinson, has become liable for bodily injury sustained by plaintiff, McNeal.

The court therefore ordered that judgment be entered in favor of McNeal in the amount of $1,500 plus interest and costs.

Manchester duly appealed.

On this appeal, Manchester contends that the court erred (1) in failing to make a finding of fact and conclusion of law that the insured, Atkinson, failed to comply with the conditions of the policy relating to the "notice of suit" and "forwarding of summons" which it characterizes as "condition[s] precedent," because such failure "prejudiced" the appellant[4]; (2) in finding that the insured, Atkinson, cooperated with the defendant because such finding is against the weight of the evidence and is clearly erroneous; (3) because the judgment is clearly erroneous, and (4) in overruling the motion to dismiss for improper venue because the defendant does not have an office or agent for the transaction of business in the City of St. Louis and the "cause of action"[5] did not accrue in the City of St. Louis.

Appellant argues that since the trial court made no finding with respect to the "[i]nsured's failure to comply with the notice provisions[6] of the policy, it must be assumed" that the trial court found this issue in favor of the plaintiff and hence erred in so finding that summons was forwarded. It argues that condition No. 7 does not permit an action against the company unless, "as a condition precedent thereto," the insured shall fully comply

with all terms of the policy, and that "plaintiff," McNeal, knowing that Atkinson was insured, did not notify Manchester of the personal injury suit. It contends that, not having notice of summons, appellant was prejudiced.

Appellant argues that the evidence does not support a finding that Atkinson cooperated with the company as required by condition 18 and that compliance with this condition is precedent to recovery.

As to venue, appellant argues that the governing statute is § 508.040,[7] and since the defendant has no office or place of business in the City of St. Louis and since the plaintiff's cause of action accrues at the place of "refusal to pay," the City of St. Louis was not the proper venue for McNeal's equitable garnishment action.

■ This is a court tried case. In such a proceeding, we are bound by certain principles relating to such hearings. In such an appeal, we review both the law and the evidence, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(3). Although there has been some confusion as to our scope of review since the revision of Rule 73.01(3), as amended January 1, 1975, which deleted the phrase "clearly erroneous" in the prior rule, this confusion has now been put to rest. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Despite the appellant's reliance on previous decisions that the judgment is to be set aside because it is "clearly erroneous," the proper scope of appellate review, as stated in *Murphy v. Carron*, supra, is that the decree or

---

4. The court did make a finding of fact and conclusion of law that the insured "cooperated" with the appellant-insurance company.

5. Appellant does not indicate whether it means the cause of action for personal injuries against Atkinson or the cause of action for equitable garnishment against the insurance company under § 379.200. Presumably, it is the latter.

6. Condition No. 1 relates to notice of accident; condition No. 2 relates to "Notice of Claim or Suit" but refers to every "demand, notice, summons or other process" received by him. Appellant nowhere contends that condition No. 1

was violated; its only contention is as to condition No. 2.

7. Section 508.040 provides: "Suits against corporations shall be commenced either in the county where the cause of action accrued, or in case the corporation defendant is a railroad company owning, controlling or operating a railroad running into or through two or more counties in this state, then in either of such counties, or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business."

judgment of the trial court will be sustained by the appellate court unless (1) it is against the weight of the evidence, or (2) it erroneously declares the law, or (3) it erroneously applies the law. The use of the words "de novo" and "clearly erroneous" is no longer appropriate in appellate review of cases under Rule 73.01. Cf. *Greer v. Zurich Insurance Company*, 441 S.W.2d 15, 21 (Mo. 1969); *Adams v. Manchester Insurance & Indemnity Company*, 385 S.W.2d 359, 363 (Mo.App.1964); *Hanover Insurance Company v. Abchal*, 375 S.W.2d 605, 609 (Mo.App. 1964). Furthermore, according to other well-settled principles in such cases, findings of the trial court are not lightly to be disturbed and should be deferred to unless it is in conflict with a preponderance of the evidence or discloses a manifest abuse or clear abuse of discretion. *Rodgers v. Rodgers*, 505 S.W.2d 138, 140 (Mo.App.1974).

■■■ In this type of proceeding, there are certain well recognized principles relating thereto. (1) Under our statutes, §§ 379.195 and 379.200, one who reduces his claim against an insured can proceed by garnishment of funds in the hands of the insurance company to collect the claim. *Taverno v. American Auto Ins. Co.*, 232 Mo.App. 820, 112 S.W.2d 941, 944 (1938); (2) conditions of an automobile liability policy requiring notice to be given to an insurance carrier as soon as practicable when an accident occurs and that suit papers be filed immediately and requiring the cooperation of the insured are valid, enforceable and binding. *Greer v. Zurich Insurance Company*, supra, 441 S.W.2d at 30 [notice and summons]; *Northwestern Mut. Ins. Co. v. Independence Mut. I. Co.*, 319 S.W.2d 898, 902 (Mo.App.1959) [notice, summons and cooperation]; *Donlon v. American Motorists Ins. Co.*, 147 S.W.2d 176, 178 (Mo.App.1941) [notice, summons and cooperation]; *Quisenberry v. Kartsonis*, 297 S.W.2d 450, 453 (Mo. 1956) [cooperation]; *Meyers v. Smith*, 375 S.W.2d 9, 15 (Mo.1964) [cooperation]; (3) although there is some conflict of authority throughout the country as to the effect of the insured's failure to comply with the policy conditions on the rights of an injured person to bring an action against the insurer for "equitable garnishment,"[8] Missouri has held to the doctrine that the rights of the injured person are derivative and that those rights can rise no higher than those of the insured so that the insurer can set up as a defense that notice of accident or suit was not given in accordance with the conditions in the policy;[9] (4) certain of the conditions in a liability policy have been construed to be "conditions precedent" while others have been considered as "conditions subsequent." In this regard there is much confusion in the decisions. It seems to be uniformly held that the "cooperation" clause[10] is a condition subsequent and ". . . where garnishee seeks to escape coverage solely because of an alleged breach of a policy provision requiring the insured to cooperate with the insurer, the burden was upon it to prove facts which would make that provision relieve [the insurer] from liability. . . ." *Meyers v. Smith*, supra, 375 S.W.2d at 15, and cases cited therein; *Colson v. Lloyd's of London*, 435 S.W.2d 42, 45 (Mo.App.1968), and cases cited therein.[11]

8. See Annot., Liability insurance—notice—papers, 18 A.L.R.2d 443, 499 (1951).

9. *Donlon v. American Motorists Ins. Co.*, supra, 147 S.W.2d at 178, rehearing overruled, Mo., 149 S.W.2d 378; *Bauman v. Western & Southern Indemnity Co.*, 230 Mo.App. 835, 77 S.W.2d 496, 498 (1934); *Meyers v. Smith*, supra, 375 S.W.2d at 15; *Greer v. Zurich Insurance Company*, supra, 441 S.W.2d at 30—"It is generally recognized in Missouri as well as elsewhere that, after an injured [appellant's brief states '*insured*'] person has obtained a judgment against an insured defendant, the judgment creditor stands in the shoes of the insured person and his rights are no greater and no less than the insured's rights would have been if he had paid the judgment and then sued his insurance company to recover the amount so paid. . . ."

10. Or the question of permission in the omnibus clause—*Hanover Insurance Company v. Abchal*, supra, 375 S.W.2d at 608–609; *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 378 S.W.2d 232, 235 (Mo.App.1964).

11. Compare, however, *Northwestern Mut. Ins. Co. v. Independence Mut. I. Co.*, supra, 319 S.W.2d at 902.

But conditions relating to suit and forwarding of suit papers are of a different hue, and such conditions are precedent to recovery, applicable not only to the insured but also to the injured person seeking to recover a judgment against the insurer. *Northwestern Mut. Ins. Co. v. Independence Mut. I. Co.*, supra, 319 S.W.2d at 902; *Donlon v. American Motorists Ins. Co.*, supra, 147 S.W.2d at 179; *Nevil v. Wahl*, 228 Mo.App. 49, 65 S.W.2d 123, 126 (1933)[12]; (5) it is uncertain whether a condition that no action lies against the company " '. . . unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of [the] policy * * * ' " is one that is precedent, subsequent or a forfeiture, for it is "immaterial." Such a condition "should be construed most strongly against the insurance carrier." *Greer v. Zurich Insurance Company*, supra, 441 S.W.2d at 31; (6) despite earlier statements to the contrary, it is now clear that prejudice to the carrier is to be considered in determining if notice of the accident was given and suit papers were forwarded. *Greer v. Zurich Insurance Company*, supra, 441 S.W.2d at 32[13]; (7) the usual rules of construction apply. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but insofar as open to different constructions, that most favorable to the insured must be adopted, *Wendorff v. Missouri State Life Ins. Co.*, 318 Mo. 363, 1 S.W.2d 99, 101–102, 57 A.L.R. 615 (1927); *Meyers v. Smith*, supra, 375 S.W.2d at 16–17; and (8) what constitutes a breach of a condition, especially cooperation or lack thereof in the defense of an action is usually a question of fact for the judge or jury hearing the cause. *Meyers v. Smith*, supra, 375 S.W.2d at 17, and cases cited therein.

Three of the appellant's points relating to notice, forwarding of the summons, "cooperation" and that the judgment was "clearly erroneous" can be considered together. Viewing this cause in the light of the various legal principles and tests stated above, we cannot conclude that the trial court erred in rendering judgment for the respondent-McNeal. It is clear that the notice of suit provisions and forwarding of suit papers was a condition precedent. But we must give the plaintiff the benefit of all evidence and the favorable inferences derived therefrom and the benefit of defendant's evidence insofar as it aids plaintiff's case; we must also defer to the trial court in all matters of credibility. The court found that Atkinson "cooperated" with the appellant. This was a reasonable finding under the evidence. The finding implied that Mr. Atkinson forwarded the summons to the appellant. The thrust of Atkinson's testimony was that he did not know or remember forwarding any papers to the insurance company but anything he received he forwarded. The magistrate's file shows that summons was served on Mr. Atkinson's sister who lived in the same building. Mr. Atkinson's statement to Mr. Crump that he did not receive any papers was made in July, 1970, some two years after the accident and months after the suit was brought. The appellant admitted receiving the papers in the State Farm action and admitted that it could not locate the underwriter file. Although given an opportunity to produce Mr. Crump, he did not testify.

The issue, therefore, of whether Atkinson either "cooperated" with the appellant and filed notice of suit and forwarded a summons was, we believe, in the posture of this case, a fact issue for the trial court which was resolved in favor of the plaintiff. We

**12.** Compare, however, *McFarland v. United States Mut. Acc. Ass'n*, 124 Mo. 204, 27 S.W. 436, 439 (1894), quoted in *Greer v. Zurich Insurance Company*, supra, 441 S.W.2d at 30–31 —where the court stated that notice of suit and forwarding of papers is a " '. . . condition subsequent . . . .' "

**13.** Earlier statements made in *Northwestern Mut. Ins. Co. v. Independence Mut. I. Co.*, supra, 319 S.W.2d at 902, were found to be erroneous. This was foretold by the Eighth Circuit in *Hawkeye-Security Insurance Company v. Davis*, 277 F.2d 765, 770 (8th Cir. 1960), relying on *Western Casualty & Surety Co. v. Coleman*, 186 F.2d 40, 44 (8th Cir. 1950), discussed in *Meyers v. Smith*, supra, 375 S.W.2d at 16.

cannot conclude that under all the evidence there was an abuse of discretion or that, under all the circumstances, the findings and conclusions of the trial court were against the weight of the evidence, erroneously declared or erroneously applied the law.

■■■ As to the fourth contention, that venue was improper, we hold that venue in the City of St. Louis was proper. The precise issue of proper venue in an equitable garnishment proceeding does not seem to have been expressly decided by our appellate courts. Appellant relies on *State v. Weinstein*, 365 Mo. 1179, 295 S.W.2d 62 (banc 1956), *Moherstadt v. Harry Newman Inc., Motor Cars*, 204 Mo.App. 619, 217 S.W. 591 (1920), and § 508.040. These decisions are not, however, dispositive of the issue. Section 508.040 provides, in pertinent part,

"Suits against corporations shall be commenced either in the county where the cause of action accrued . . . or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business."

This section is applicable when a corporation is a sole defendant. *State v. Weinstein*, supra, 295 S.W.2d at 65. In suits against insurance companies it has often been held that proper venue is the place where the cause of action accrued. Cf. *Daniels v. Yarhola Pipe Line Co.*, 206 S.W. 600 (Mo.App.1918); note 10, § 508.040, V.A.M.S. It has been held that a cause of action for a breach of an obligation to pay under an insurance policy arises at the place where the insurer is to pay the loss, and where the policy is silent as to the payment of the loss, it is presumably to be made at the residence of the insured. See 44 Am. Jur.2d, Insurance, § 1898, p. 835 (1969); cf. *Halliwill v. Mutual Service Casualty Insurance Co.*, 257 Minn. 252, 100 N.W.2d 817, 818 (1960). Since a foreign insurance company may be sued either in the county where the cause of action arose or in the county where it keeps an office for the transaction of business, we believe venue was proper since the cause of action accrued at the place of residence of the plaintiff. When default judgment had been rendered against Atkinson in the City of St. Louis and § 379.200 became applicable, the appellant became subject to an equitable garnishment at the place where the obligation was due—the residence of the plaintiff, Mr. McNeal. The collision occurred in the City of St. Louis. The city was the proper venue for the action for personal injuries. The garnishment action is ancillary to the main action; hence, venue is proper in the City of St. Louis. Cf. *In re Breese's Estate*, 51 Wash.2d 302, 317 P.2d 1055, 1057 (1957).

During the hearing, an attorney representing appellant admitted that, although there were no agents or office in the city, the company did write for residents of the City of St. Louis.

Under all these circumstances, we rule this point against appellant.

Lastly, we must dispose of a motion to dismiss the plaintiff's cause of action, filed on the day of oral argument, on the ground that the petition fails to allege the performance of conditions precedent to recovery in accordance with the insurance contract.

■■■ Rule 55.16 provides that, in pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions have been performed or have occurred. In an action upon a contract it is necessary to allege generally the performance of conditions precedent. *Harding v. State Farm Mutual Automobile Ins. Co.*, 448 S.W.2d 5, 7 (Mo. banc 1969), and cases collected in note 7, § 509.170, V.A.M.S. But this is not an action on the contract; it is an equitable garnishment proceeding pursuant to § 379.-200. We overrule the motion.

We have read the transcript, the briefs and contentions of the parties, all the authorities cited therein and many more and conclude that the trial court did not err.

The judgment is affirmed.

KELLY and GUNN, JJ., concur.