**TRUCK INSURANCE EXCHANGE, Plaintiff-Appellant,**

v.

**Ralph L. HUNT and Sharon Sue Anderson, Defendants-Respondents.**

**No. 10566.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 21, 1979.

Bob J. Keeter, Schroff, Keeter, Glass & Newberry, P.C., Springfield, for plaintiff-appellant.

Donale E. Bonacker, Bonacker & Reynolds, Springfield, David W. Ansley, Woolsey, Fisher, Whiteaker & Stenger, Springfield, for defendants-respondents.

MAUS, Judge.

In this declaratory judgment action the plaintiff seeks to establish that Barry F. Hubbard was not on July 5, 1974, an insured under the "omnibus clause"[1] of the liability coverage of a policy issued to T.A.G. Enterprises, Inc. The defendants are Hubbard (who defaulted), Ralph L. Hunt, Sharon Sue Anderson and James Edward Barke (who defaulted). The latter three defendants were allegedly injured in an automobile accident on July 5, 1974, involving the insured automobile while driven by Hubbard. The case was tried to a jury who found the issue submitted in favor of the defendants. Plaintiff's first point on appeal is that the trial court erred in not directing a verdict for the plaintiff at the close of all the evidence. This is premised upon its proposition the defendants had the burden of proof to establish coverage and the evidence was not sufficient to support the verdict and judgment. By their brief the defendants agree that the burden of proof to establish coverage was upon them.[2] However, as will be developed later, that agreement did not extend to all aspects of the case and certainly was not binding on the trial court. It is not always the burden of one claiming under a liability insurance policy to prove all issues upon which coverage is dependent. For example, if the insurer seeks to avoid coverage because of an exclusion or breach of condition subsequent, the burden of proof on such issues is upon the insurer. *Mission Insurance Company v. Ward,* 487 S.W.2d 449 (Mo. banc 1972); *McNeal v. Manchester Ins. & Indem. Co.,* 540 S.W.2d 113 (Mo.App.1976); *Michigan Mutual Liability Co. v. Stallings,* 523 S.W.2d 539 (Mo.App.1975). In this case, as delineated by the evidence as distinguished from the pleadings, the sole issue was whether or not express permission to use the insured automobile had been terminated.[3] Intriguing as that question in the ab-

---

1. The omnibus clause provided coverage for "(2) any other person while using such automobile and any other person or organization legally responsible for its use, provided the actual use of such automobile is by the named insured or with his permission." For cases dealing with the distinction between *use* with permission and *driving* with permission see *Weathers v. Royal Indemn. Co.,* 577 S.W.2d 623 (Mo. banc 1979); *Aetna Life & Cas. Co. v. Western F. Ins. Co.,* 570 S.W.2d 691 (Mo.App.1978); *Farm Bureau Mut. Ins. Co. v. Brodie,* 558 S.W.2d 751 (Mo.App.1977).

2. So. held where the issue was renewal after expiration, *M. F. A. Mut. Ins. Co. v. Quinn,* 259 S.W.2d 854 (Mo.App.1953); where the issue was implied permission, *Hanover Insurance Company v. Abchal,* 375 S.W.2d 605 (Mo.App. 1964); where the issue was whether the vehicle was a "non-owned automobile" or a "temporary substitute automobile", *State Farm Mut. Auto. Ins. Co. v. Johnson,* 586 S.W.2d 47 (Mo. App.1979). Also see *Michigan Mutual Liability Co. v. Stallings,* 523 S.W.2d 539 (Mo.App. 1975).

3. To be distinguished are those cases in which a vehicle subsequent to permissive use was returned and retaken without further permission. *Bekaert v. State Farm Mutual Automobile Ins. Co.,* 230 F.2d 127 (8th Cir. 1956); *Travelers Insurance Company v. Kinney,* 238 F.Supp. 652 (E.D.Mo.1964); *Wells v. Hartford Accident and Indemnity Company,* 459 S.W.2d 253 (Mo. banc 1970).

stract may be, in the circumstances of this case this court is not called upon to do so and does not decide which party generally bears the burden of proof on such issue.[4]

The plaintiff's first point requires a summary of the evidence. T.A.G. was the named insured in the automobile insurance policy in question in which a 1972 Ford was one of the described vehicles. T.A.G. was an investment company and had commercial property and real estate and a used car dealership. Its office was in Columbia. Carson Teel was President of T.A.G. Teel and a business associate decided to attempt to organize a mobile home manufacturing business. The associate introduced Hubbard to Teel. Hubbard had experience in the mobile home manufacturing business. Arrangements were made for Hubbard to help in organizing the business, primarily selling shares in a new company. Hubbard was to provide his own automobile and pay his own expenses. He had no instructions on where to go or whom to contact. His compensation was to be a job and a stock option. He started work in late April or early May. Early in May Hubbard's automobile broke down. On or about May 10 Teel loaned the insured Ford, which carried a dealer's tag, to Hubbard. Teel knew that Hubbard had no other automobile for his personal use and granted Hubbard unrestricted use of the automobile. No time limit was placed upon this use.

Approximately the first part of June, because of an adverse development concerning the proposed mobile home plant, Teel realized that the business would not be organized. Teel decided to sell the car. Teel tried to locate Hubbard, apparently by phone calls. A week or two after June 4 an employee of Teel saw the automobile at a bar in Columbia. He reported to Teel who went to the bar.

At this meeting Teel and Hubbard agreed upon a price for the automobile. At that price T.A.G., would make a profit, although Teel couldn't say how much. Teel related what was said at that meeting in a variety of ways. Teel, on October 9, 1974, gave a statement to a representative of the plaintiff. On October 22, 1974, a second statement was given. These statements, by agreement, were admitted as substantive evidence. Concerning the meeting in the statement of October 9th, Teel said: "[H]e came back to Columbia approximately June the 10th or 11th and I was to pick up the car; . . . and he says I'll be back in three days and pay you for it and then we started looking for him right after that . . . ." The next question and answer were: "Q: In other words you discussed settlement, not settlement but sale of the vehicle to him at that time, is that right?" A: "That's right." Teel later agreed with the representative's statement that as far as Teel was concerned after June 10th, Hubbard was using the car without permission.

In the statement of October 22nd the following references were made: "[H]e just happened to be here and I found him. . . I was looking for the car prior to that without any results and I happened to be going by the Columbia Inn and I saw this car so I walked in on him." The following questions and answers were:

"Q: Ok. Now what was the extent of the discussion at this time? A: He said I'm going to buy your car and I'm going to go get the money and I'll be back in about three days. Q: Did he say where he was going to go? A: No he didn't. He said he had a job down south and he never did say where. . . . Q: Ok and then after June the 10th then you had an understanding that he was to pay—bring the car back—or come back in three days then? A: That's right. Q: And pay you the money for the car. And after that period of time he would have no reason to believe that he had implied permission to use the car. A: That's exactly right."

4. The failure to give a burden of proof instruction, when that burden was upon the prevailing party in a declaratory judgment action to determine coverage, was held to be reversible error. *State Farm Mut. Auto. Ins. Co. v. Johnson*, supra, n. 2.

At the trial, when first asked what transpired concerning the car his answer was: "He told me that he would buy the car." After questions relating to a time limit he said, "Mr. Hubbard said he would buy the car and he had to go down south and get the money and I told him that I wanted either the money or the car in three days." Teel subsequently stated several times that he gave Hubbard three days. Later, "I told him to have the money or the car back here in three or four days . . . three days."

When he had not heard from Hubbard by about June 25, Teel, although he did not believe the automobile to be in Boone County, contacted a deputy sheriff of that county. This visit was to no avail as he told the deputy he didn't want a warrant but just wanted his car picked up. Later, Teel called a friend in Rockport who was a highway patrolman. He asked the friend to see if the automobile was at Hubbard's mother's as she lived in that area. This call was of a personal rather than an official nature. The accident in question occurred on July 5 in Springfield.

Teel had engaged in the liability insurance business for twenty-three years. He was familiar with the permissive user omnibus clause. About July 14th defendant Hunt called Teel and they discussed insurance coverage on the automobile Hubbard was driving. Teel said nothing concerning the dealings he had with Hubbard in reference to that automobile.

Concerning plaintiff's point of the insufficiency of the evidence, there is no question but what Hubbard was granted indefinite permission to make unrestricted use of the automobile. The decisive question is whether or not the evidence is conclusive that such permission was terminated. The answer hinges upon a determination of what is necessary to effectively terminate such permission. The court has been cited to no Missouri case expressly dealing with the subject. Independent research has developed but little authority.

In determining the question of permissive use relative to an omnibus clause, the courts to one degree or another follow one of three rules. They are the initial permission rule, the conversion rule, and the minor deviation rule. *McKee v. Travelers Insurance Company*, 315 S.W.2d 852 (Mo.App.1958); Annot. 5 A.L.R.2d 600. In those cases which have expressly considered the choice, the courts of Missouri have followed the minor deviation rule. *Speidel v. Kellum*, 340 S.W.2d 200 (Mo.App.1960); *Farmers Mutual Automobile Insurance Co. v. Noel*, 211 F.Supp. 216 (W.D.Mo.1962).

Under the minor deviation rule it is said "if the use made by the bailee is not a *gross* violation of the terms of the bailment, even though it may have amounted to a deviation, protection is still afforded such additional insured." 6C Appleman, Insurance Law and Practice (Buckley ed.), § 4368, p. 216. Or, stated another way, a material deviation from the scope of permission constitutes a use without permission. *McKee v. Travelers Insurance Company*, supra. Under this rule coverage has been denied where an employee contrary to instructions was using a vehicle for personal purposes, *McKee v. Travelers*, supra; where an employee was returning his employer's automobile and for personal reasons was two and one half miles off the route, *Speidel v. Kellum*, supra; where at 9:30 a. m. initial permission was granted to use an automobile in town for one and a half hours and the accident occurred at 7:00 p. m. out of town, *Savage v. American Mutual Liability Ins. Co.*, 158 Me. 259, 182 A.2d 669 (1962); and where permission was granted to use an automobile for 15 or 20 minutes during the noon hour and an accident occurred ten hours later, *Wilson v. Hartford Accident and Indemnity Co.*, 272 N.C. 183, 158 S.E.2d 1 (1967).

But, such cases dealing with a deviation from a limited scope of permission are not decisive here. This case does not involve a deviation from the scope of permission which, when granted, was expressly or impliedly limited. The expressly granted permission in this case was for indefinite, unrestricted or unfettered use. The question

here is more kin to the determination of what was the scope of implied consent.[5]

While no Missouri case has expressly defined what is necessary to terminate such unrestricted permission, principles have been enunciated which are applicable. In *Hauser v. Hill,* 510 S.W.2d 765 (Mo.App. 1974) the question was whether or not an employee had implied permission to use his employer's vehicle to go home to eat lunch. In upholding a determination that he did, the court said: "[C]overage should not be defeated where the driver has a reasonable basis to believe he is operating the vehicle within the scope of the permission, express or implied, given to him by the owner." *Hauser v. Hill,* supra, 510 S.W.2d at 768. In *United States Fidelity & G. Co. v. Safeco Ins. Co. of Am.,* 522 S.W.2d 809 (Mo. banc 1975) a daughter who had been granted unfettered use of her mother's automobile permitted a friend to drive the automobile. The court considered whether or not the friend was using the car with the permission of the mother within the meaning of the omnibus clause under policy. When the daughter started to drive her mother instructed her not to let others drive. But, the court held that in spite of such admonition from the circumstances surrounding the unfettered use the daughter had implied permission to let her friend drive. In speaking of the mother's contrary instructions the court said: "If there are to be restrictions, to be effective they must be more than vagaries, which is all Mrs. Kloepper imposed at best. The restrictions must be explicit." *United States Fidelity & G. Co. v. Safeco Ins. Co. of Am.,* supra, 522 S.W.2d at 814. Also to be noted as indicative of the necessity for unequivocal language to prevent coverage from being extended under an omnibus clause is *Weathers v. Royal Indem. Co.,* 577 S.W.2d 623, 627 (Mo. banc 1979). In that case the Hertz rental agreement which granted unfettered use of the insured automobile except for such purposes as carrying for hire, towing or in a race, provided the "[v]ehicle shall NOT be operated by any person except

Customer" and certain others not applicable. The customer let a friend drive and the friend was nevertheless found to be insured under the omnibus clause. In so holding, the court observed the only reference to the insurance coverage being void was in regard to use in Mexico.

Other principles of insurance law are applicable. When express permission is relied upon to establish omnibus coverage, that permission must be "of an affirmative character, directly and distinctly stated, clear and outspoken." *Bourne v. Manley,* 435 S.W.2d 420, 426 (Mo.App.1968). When such express permission is terminated, that termination must be unequivocal. It is firmly established that the omnibus clause should be construed, perhaps a better word is applied, to broaden coverage, *Weathers v. Royal Indem. Co.,* supra, and applying that maxim, termination of unfettered use should be clear and definite.

A standard for the termination of express unfettered use cannot be expressed in the abstract. As demonstrated by the cases cited, language and conduct considered effective under some circumstances may not be effective under different conditions. The standard must take into consideration the context in which the termination is expressed. Since the purposes of the omnibus clause include the protection of the public and one using the vehicle of another, 12 Couch on Insurance 2d 45:293, pp. 305–307, it is logical that a standard should be premised upon the reasonable belief of the user. While a summarization by its nature is subject to exceptions and modifications, it seems appropriate that the indefinite, unfettered use of a vehicle created by express permission must be terminated by such language and conduct that a reasonable person, in the same or similar circumstances as the permittee, should clearly understand the permissive use had ended.

While such a standard has not always been clearly expressed, it has been applied. In *Standard Accident Insurance Company v. Gore,* 99 N.H. 277, 109 A.2d 566 (1954) a

---

5. *Hauser v. Hill,* 510 S.W.2d 765 (Mo.App.1974).

mother's admonition to her son not to use her automobile as a taxi was not an effective termination. In so holding the court said: "Whether it was revoked by the owner turned upon the reasonable meaning of what she said, rather than some interpretation which her son may have given it in his testimony." *Standard Accident Insurance Company v. Gore*, supra, 109 A.2d at 570. *Liberty Mutual Insurance Company v. Behringer*, 419 S.W.2d 651 (Tex.Civ.App.1967) demonstrated the importance of the circumstances. In that case, the owner's statement to her boy friend (whom she married in a few weeks) that he was not taking a boy for a ride was found not to be a termination and the court said: "Under such circumstances the trier of fact had a right to take all circumstances into consideration, and conclude that if the use of the car by Aiken was not with Miss Pepper's tacit or implied consent, she could have found some way to prevent its use." *Liberty Mutual Insurance Company v. Behringer*, supra, 419 S.W.2d at 653. For a case submitting to the jury the question of whether or not a son could reasonably believe he could disregard his father's admonition see *State Farm Mutual Automobile Insurance Co. v. Williamson*, 331 F.2d 517 (9th Cir. 1964). Also *Randig v. O'Hara*, 123 Pa.Super. 251, 187 A. 83 (1936) and *Christiansen v. Schenkenberg*, 204 Wis. 323, 236 N.W. 109 (1931).

■ Turning to the facts of this case, the question of termination primarily turns upon the testimony of Teel concerning what transpired at his meeting with Hubbard. The plaintiff adroitly argues that since the burden of proving coverage was on the defendants (which proposition is not decided) the defendants are bound by the only evidence on that issue, the testimony of Teel. The plaintiff then asserts that testimony conclusively fails to make a submissible case for the defendants. This does not follow. The testimony of Teel does without equivocation establish that Hubbard had been granted the unfettered use of the automobile. The evidence concerning revocation of that permission is not so conclusive. The statements of Teel on that subject were conflicting. In Teel's October statements the reference to a time limit was Hubbard's self-imposed expectation concerning when he would get the money. These statements are to be measured in the light of all the circumstances such as: Hubbard had for several weeks without compensation tried to assist Teel in a venture that had failed; Teel's desire to sell the car; and Teel permitting Hubbard to continue with the unfettered use of the automobile, knowing it was going to be used as a personal car, with no idea of where Hubbard was going to get the money. The evidence would permit the conclusion the overriding desire of Teel was to sell the automobile and the conversation was not a termination by such language and conduct that a reasonable person in the position of Hubbard clearly understood his permissive use was terminated in three days.

■ Plaintiff's next point concerns a motion to produce filed by defendant Hunt the morning of, but prior to, the trial commencing. Some months before this defendant had requested copies of statements given by officers of T.A.G. to the plaintiff concerning matters raised in the petition. Plaintiff by letter declined, stating its reasons. The motion in question sought such a statement given by Teel. It further alleged that Hunt's attorney two days before trial talked with Teel who said he could not remember any specifics but his memory was recorded in a statement given the plaintiff. Counsel for plaintiff objected to the motion, including an objection that the motion was untimely filed. Nevertheless, the court proceeded to hear counsel upon the merits of the motion and ordered production.

Plaintiff seeks reversal because of the untimeliness of the motion. V.A.M.R. 44.-01(d) provides for service of a written motion and notice of hearing five days before the time specified for the hearing "unless a different period is fixed by law or court rule or by order of the court". V.A.M.R. 55.30(a) provides for the establishment of regular times for the hearing of motions and specifically provides the court "at any time or place and on such notice, *if any*, as

it considers reasonable may make orders for the advancement, conduct and hearing of motions." (Emphasis added) The motion alleges the movant learned of the importance of the statement two days before it was filed and heard. The action of the court could well be considered as an order shortening the time for hearing, which was an order within its discretion. *Green v. Wyrick,* 428 F.Supp. 732 (W.D.Mo.1976); *LaChance v. LaChance,* 439 S.W.2d 553 (Mo. App.1969). In all events the burden of showing the error of the trial court, if indeed it was an error, resulted in prejudice requiring reversal is upon the plaintiff. *Siedler v. Tamar Realty Company,* 491 S.W.2d 566 (Mo.App.1973). No prejudice has been demonstrated.

■ The plaintiff next complains that the production of the Teel statement violated the "insured-insurer privilege", citing *State ex rel. Cain v. Barker,* 540 S.W.2d 50 (Mo. banc 1976).[6] That case dealt with "a new privilege in Missouri law (insured-insurer)", *State ex rel. Cain v. Barker, supra,* 540 S.W.2d at 59. But, that privilege as developed applied where the insurer was regarded as an intermediary to transmit information for the defense of a client (the insured) to his lawyer (although employed by the insurer). That relationship does not obtain in this case.[7] The information did not pertain to the defense of Teel or T.A.G. Paraphrasing a phrase from Annot. 22 A.L.R.2d 659 (1952), quoted in *Cain* at p. 54: The statement of Teel was "[not] concerning an event which may be made the basis of a claim against him covered by the policy" and was "[not] intended for the information or assistance of the attorney in so defending him." ([not] added).[8] In speak-

ing of the situation it has been said: "A confidential statement made by the insured to the attorney, or to the insurer for the use of the attorney, would thus be privileged if sought to be introduced at the trial of the injured person's action against the insured, but not in a controversy between the insured, or one claiming under him, and the company itself over the company's liability under the policy." McCormick on Evidence 2nd Ed. Handbook pp. 190–191.[9]

■ Plaintiff's next point is that the trial court erred in not permitting it to show to the jury that Hubbard was a defendant and he defaulted. This point is premised upon the proposition that such default by implication gives rise to an admission that he had no coverage. It is then asserted that since the other defendants, allegedly injured parties, have no greater rights than Hubbard, citing cases such as *Drennen v. Wren,* 416 S.W.2d 229 (Mo.App.1967), this implied admission should have been permitted in evidence against them.

This does not follow even if Hubbard's failure to plead constitutes an admission by pleading. "The general rule is that the admissions of a defendant are not admissible against his codefendants unless they consent thereto, adopt the statements as their own, or, as hereinafter noted, there is privity between the defendant making the admission and the codefendants." 29 Am. Jur.2d Evidence, § 699, p. 756. In the sense that if Hubbard could not establish coverage the other defendants cannot, the other defendants have no greater rights as stated in *Drennen v. Wren, supra.* But, this does not mean the other defendants, at least in regard to circumstances up to the time of the accident, are now claiming through him.

---

6. For the distinction concerning an allegation of error based on privilege as distinguished from work product see *Halford v. Yandell,* 558 S.W.2d 400 (Mo.App.1977).

7. For the scope of the privilege when an insurer employs an attorney to represent the company see *State ex rel. Great Am. Ins. Co. v. Smith,* 574 S.W.2d 379 (Mo. banc 1978) overruling *State ex rel. Great Am. Ins. Co. v. Smith,* 563 S.W.2d 62 (Mo. banc 1978).

8. "Until the issue of the obligation to defend is finally resolved the necessary attorney-client relationship does not exist . . . ." *Kansas City Fire & Marine Ins. v. Hartford Ins.,* 43 A.D.2d 888, 351 N.Y.S.2d 767, 768 (1974).

9. If the document contained privileged information, it could be presented to the court and the privileged information kept confidential. *Kansas City Fire & Marine Ins. v. Hartford Ins., supra,* no. 8.

The rights of the parties are fixed at the time of the accident. V.A.M.S. § 379.195; *Hanover Insurance Company v. Abchal*, 375 S.W.2d 605 (Mo.App.1964); *Helmkamp v. American Family Mutual Insurance Co.*, 407 S.W.2d 559 (Mo.App.1966). There was not such a privity between Hubbard and the other defendants to cause his admissions by pleading or lack thereof to be placed in evidence against them.

Of course, the conduct of the parties after an accident may provide some inference to the relationship of the parties before the accident. The vehicle owner's failure to check on or complain of the driver's wrongdoing was so considered in *Winterton v. Van Zandt*, 351 S.W.2d 696 (Mo.1961). But, for an act or failure to act to give rise to such an inference, " 'such inference must be drawn from substantial and probative evidence which is sufficient to lead to a conclusion as to a certain result which, according to the common experience of mankind, follows naturally and usually from the given state of facts and which at the same time logically and according to the common experience of mankind excludes a different result or conclusion.' " *Straughan v. Asher*, 372 S.W.2d 489, 493 (Mo.App.1963). In this case Hubbard was shown to be without assets. His default does not exclude the conclusion that default resulted from a lack of funds and interest, coupled with a well-founded assumption that the allegedly injured parties would carry the burden. In the circumstances of this case the trial court did not err in excluding such offer.

The case was submitted to the jury upon Instruction No. 2 (submitted by plaintiff) providing for a verdict for the plaintiff if the jury found that on June 10 Teel told Hubbard to return the automobile or to pay for it within three days. The defendants offered an instruction providing for a verdict for the defendants if Teel's permission was not withdrawn or the withdrawal of the permission was not communicated to Hubbard in a manner which should lead a reasonable man, under the circumstances, to believe he no longer had permission. This was refused. The plaintiff seeks reversal because the court did not give an instruction providing for a verdict for the defendants.

■ The plaintiff cites Page XLIX of the M.A.I. volume which states: "The failure to instruct on every issue has been error, and it continues to be error." It is also asserted that the omission is fatal because the defendants had the burden of proof. These contentions overlook the in-court agreement of the parties before the case was submitted. In referring to Instruction No. 2 it was agreed "that is the only fact issue, as submitted in that instruction" and on that issue the plaintiff assumed the burden of proof. Under this stipulation no error was made in instructing the jury.

■ Plaintiff's next point is that the trial court erred in giving Instruction No. 1, which was M.A.I. No. 2.01. This instruction was read to the jury as the trial opened. Plaintiff's complaint is that this instruction should have been modified to require the defendants to proceed first. This contention is without merit for two reasons. First, the plaintiff made no objection to proceeding first. "And, having done so, they cannot very well insist that, in reality, they assumed a burden which was not theirs." *Pacific Portland Cement Co. v. Food Mach. & Chem. Corp.*, 178 F.2d 541, 547 (9th Cir. 1949). Second, at the time the trial opened and this instruction was given, under the pleadings the plaintiff sought to avoid coverage not only upon the basis of lack of permission, but also upon the basis of the breach of conditions of the policy: Hubbard's failure to give notice of the accident and his failure to cooperate with the plaintiff. On these issues the plaintiff did bear the burden of proof. *Mission Insurance Company v. Ward*, supra, 487 S.W.2d 449; *McNeal v. Manchester Ins. & Indem. Co.*, supra, 540 S.W.2d 113; *Michigan Mutual Liability Co. v. Stallings*, supra, 523 S.W.2d 539. Under these circumstances it was not error for the plaintiff to proceed first. Compare *Charles H. Fuller Co. v. St. Louis Wholesale Drug Co.*, 219 Mo.App. 519, 282 S.W. 535 (1926).

■ The trial court, as requested in plaintiff's petition, appointed an attorney as guardian ad litem for defendant Anderson, who was a minor. The guardian ad litem appeared for the minor throughout the trial. The trial court allowed the guardian ad litem a fee of $750.00, taxed as part of the costs against the plaintiff. The plaintiff does not question the basic power of the court to make the award,[10] but contends it was error because the minor defendant Anderson had an estate, at least a claim for personal injuries. It was established in the record that by the time of trial defendant Anderson had disappeared. The guardian ad litem disavowed representing her on such a claim and doubted if such a claim would be filed. Under these circumstances, there is no necessity for determining whether or not the estate of the minor barred the trial court from allowing that fee. The plaintiff also urges that such allowance was improper because there was no evidence concerning the value of the guardian's services. The guardian did state the services rendered and time expended. The trial court was competent to determine the value of such services without opinion evidence. *Beckman v. Beckman,* 545 S.W.2d 300 (Mo. App.1976).

The judgment is affirmed.

All concur.

---

**10.** Concerning the basic power of the court to make such an award see *St. Paul Insurance Company v. Carlyle,* 428 S.W.2d 753 (Mo.App. 1968).