STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Plaintiff-Respondent,

v.

ST. LOUIS COUNTY, Kenneth Edward Carpenter, Charles E. Huffman, Frances R. Goslik, Andrew Williams, and Rubin Carr, Defendants-Appellants.

No. 41111.

Missouri Court of Appeals, Eastern District, Division Three.

April 22, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 20, 1980.

Frederick H. Mayer, John H. Quinn, III, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mildred Hessel, Don Williams, Clayton, Raymond Bruntrager, Sr., St. Louis, for defendants-appellants.

Ben Ely, Victoria M. Spann, Kortenhof & Ely, St. Louis, for plaintiff-respondent.

DOWD, Presiding Judge.

Termination of permissive use under omnibus clause.

Andrew Williams, (hereinafter appellant) the driver of a vehicle involved in a collision with a vehicle insured by respondent appeals from the trial court's declaratory judgment ruling respondent's insurance policy did not afford liability coverage to Kenneth Carpenter, the driver of the insured vehicle at the time of the collision. The trial court's judgment was based upon findings and conclusions that, at the time of the accident, the driver of the insured vehicle was not using the vehicle within the express or implied scope of permission granted by the named insured, Charles Huffman. The insured vehicle was involved in an accident with a vehicle driven by Williams and a St. Louis County Police vehicle on the morning of September 12, 1976.

Appellant argues the trial court's judgment is contrary to or not supported by the evidence and erroneously declares or applies the law. Appellant contends the respondent's insurance policy affords coverage for the driver of the insured vehicle.

The driver of the insured vehicle and the named insured gave generally conflicting evidence concerning the scope of permission granted to use the insured vehicle.

A. *Kenneth Carpenter's testimony*

Kenneth Carpenter testified that on September 12, 1976 he had known the named insured for approximately six months as an acquaintance at the service station at which Huffman worked. On that date, Carpenter was 14 years old. He did not tell the named insured his age or that he did not have a driver's license. He had not previously driven a vehicle to the service station while Huffman was present.

Carpenter, in the company of a young girl Frances Goslik, first saw Huffman at approximately 2:00 to 3:00 a. m. on September 12 at the service station and asked to use the insured's vehicle at approximately 4:00 or 5:00 a. m. to go to the home of his companion. He had never attempted to borrow the insured vehicle before September 12, 1976. Huffman hesitated and did not immediately give Carpenter permission to use his vehicle, telling Carpenter he never lent his automobile to anyone. Eventually, however, Huffman permitted Carpenter to use the insured vehicle to go to Fran's house a short distance from the station and then to bring the vehicle back.

Carpenter and Fran drove to Fran's house but Fran could not gain entrance. Thereafter, Carpenter and Fran began "cruising around" the Jennings area. The youths returned to Fran's house, and Fran entered for a few minutes. Both then returned to the service station at about 7:00 a. m. Huffman seemed a bit upset and indicated he thought Carpenter should have been back sooner.

Carpenter made another request to use the insured vehicle in approximately one-half hour to an hour later and told Huffman he wanted to use the car to get something to eat. Huffman glared, and Carpenter promised to put $5.00 worth of gas in the automobile if the named insured would let Carpenter use the vehicle.

Huffman did not tell Carpenter of any restrictions the second time he granted Carpenter permission to use the automobile. Carpenter told the named insured he would return the vehicle by 11:00 a. m. but does not remember whether Huffman asked Carpenter when he would return the vehicle. Carpenter testified Huffman agreed to the 11:00 time limit. Carpenter believed he had the unrestricted use of the vehicle until 11:00 a. m.

Carpenter and Fran used the vehicle to go "riding around". Carpenter claims Fran telephoned Huffman at approximately 9:30 a. m. from a service station. He could not remember the exact location. Both youths telephoned Huffman because they wanted an extension of their use of the automobile. Carpenter spoke to Huffman who refused to grant the extension past the 11:00 deadline. The youths continued away from the

service station to a restaurant at Brown and Natural Bridge Roads. Carpenter said he and Fran arrived at the restaurant at approximately 10:00 a. m.

After Carpenter and Fran ate, they traveled east on Natural Bridge and then drove north on North Hanley to Interstate Highway 70. They were on their way to the service station. A police vehicle began pursuing Carpenter at Bermuda on Highway 70. Carpenter testified he panicked, fled the police, and exited Highway 70 going south on Jennings Station Road. The turn to the south took the youths away from the service station. Carpenter testified the south turn was easier to make than the north turn. He turned west onto Natural Bridge, and the accident occurred approximately four blocks west of the intersection of Jennings Station and Natural Bridge. Carpenter testified his highest speed, during the chase would have been 50 or 60 miles per hour. In his deposition, he testified he reached speeds of 60 or 70 miles per hour perhaps 80 miles per hour. The accident occurred at approximately 11:00 a. m. Carpenter testified he was driving back to Huffman at the service station when the police began chasing him and could have been back by 11:00 a. m. were it not for the chase.

### B.  Charles Huffman's testimony

The young man who is the named insured also testified. Huffman was to have worked from 10:00 p. m. on September 11 until 2:00 p. m. on September 12 at the service station. Carpenter and his friends came to the service station at approximately midnight and stayed until approximately 8:00 or 9:00 a. m. Although Huffman was acquainted with Carpenter through the service station, Huffman did not know Carpenter's age or that he did not have a driver's license. Huffman testified Carpenter first asked to use Huffman's automobile at approximately 7:00 a. m. Carpenter told Huffman he wanted to pick up Carpenter's vehicle which had needed repairs. Huffman did not pay attention to nor inquire about the specifics of who was repairing

Carpenter's claimed vehicle or where it was being repaired but believed Carpenter told him the vehicle was in Ladue. Carpenter persisted in his request to use the vehicle for approximately an hour until Huffman "finally got fed up" and relented.

Huffman permitted Carpenter to take Huffman's vehicle at approximately 8:00 a. m. with instructions to "go straight there [the location of Carpenter's claimed vehicle] and straight back." Huffman did not remember any time limit being imposed. He did not see Carpenter put gasoline in the vehicle. Huffman recalled Carpenter's statement about putting gasoline in Huffman's vehicle, but Carpenter never gave Huffman money.

Carpenter left with a girl who telephoned Huffman at approximately 10:00 a. m. Huffman expected Carpenter back between 10:00 to 11:00 a. m. Huffman maintains the girl, who he later learned was Fran, told Huffman she and Carpenter were a little late. Huffman told Fran to "come right then and there." She responded that she and Carpenter would be gone for awhile. Huffman then told Fran "to just forget it and come on back with [his] car." Huffman understood the youths to be in Ladue where Carpenter's claimed vehicle was.

### C.  Frances Goslik's testimony

Fran testified she first came to the service station in the morning at daylight. She was 12 years old at the time. Her testimony at trial and in her deposition is confused and inconsistent with itself and testimony by Carpenter and Huffman, and she claims a loss of memory from the time she left her mother's house until she "had handcuffs behind my back, crying." She did testify, however, that she and Carpenter returned to the service station for a brief time on the morning of September 12 between their initial use of Huffman's vehicle and the use which ended in an accident. Fran gave no testimony as to the contents of a telephone conversation with Huffman concerning continued use of Huffman's vehicle.

Appellant argues the foregoing evidence establishes Carpenter was using the vehicle with the permission of Huffman at the time of the accident[1] and to hold otherwise violates public policy. We agree with appellant that Missouri's public policy, as expressed by the Motor Vehicle Safety Responsibility Law and cases interpreting omnibus clauses thereunder, is to apply the omnibus clause to broaden automobile liability coverage. § 303.190 RSMo 1969; *Weathers v. Royal Indem. Co.*, 577 S.W.2d 623, 625–26[1, 2] (Mo. banc 1979); *Truck Ins. Exchange v. Hunt*, 590 S.W.2d 425, 430 (Mo.App.1979).

Given the public policy, the youthfulness of the permissive users of the insured vehicle, the conditions at the time permission to use the vehicle was granted, and the failure to clearly specify restrictions upon the permissive use of the vehicle, we believe the evidence would support the conclusion Huffman permitted Carpenter to have an indefinite and virtually unfettered use of the insured vehicle on the morning of September 12 when Carpenter took the automobile.[2] *United States Fidelity & Guar. Co. v. Safeco Ins. Co.*, 522 S.W.2d 809, 814[2] (Mo. banc 1975). Such conclusion is not dispositive, however.

The evidence in the instant case, giving deference to the trial court's province to judge the credibility of witnesses, *Hood v. Millers' Mut. Ins. Ass'n*, 578 S.W.2d 605, 608[2] (Mo.App. 1979), would also support the conclusion that, by telephone conversation between 9:30 to 10:00 a. m. on September 12, Carpenter's permission to use the insured vehicle to do anything other than immediately return to the service station was terminated. *Truck Ins. Exchange v. Hunt, supra* at 430[4]. Carpenter's original indefinite, unfettered permission to use the insured vehicle during the morning of September 12 could only be terminated by a specific termination, communicated to Carpenter in such a way that Carpenter should reasonably have understood the termination of permission. *Truck Ins. Exchange v. Hunt, supra*. Although the trial court could come to a different conclusion than it did, the trial court could find Huffman's testimony the more credible and that Huffman ordered Carpenter to return the insured vehicle immediately rather than at 11:00 a. m. Upon such finding, when Carpenter did not immediately return to the service station following his telephone conversation with Huffman but concededly continued away from the service station to use the vehicle for an additional 1 to 1½ hours, Carpenter would be using the insured vehicle without the permission of the named insured as the trial court concluded.

The judgment is affirmed.

CRIST and REINHARD, JJ., concur.

---

1. Appellant's brief states the insurer in the instant action has the burden to prove non-coverage under the omnibus clause. Such is not clear. *State Farm Mut. Auto Ins. Co. v. Johnson*, 586 S.W.2d 47, 52–53[6] (Mo.App.1979). In declaratory judgment actions, the burden of proof usually rests where it would have rested had a different type of suit been brought, and this often depends upon the condition of the pleadings and the character of the issues involved in the case. The burden of proving the existence of a valid contract of insurance is upon the named insured, the driver of the insured motor vehicle, and the driver and passengers of the other vehicle involved in the collision. If the insurer attempts to avoid coverage by reason of an exclusion contained in the policy, the burden of proof is upon the insurer. *State Farm Mut. Ins. Co. v. Johnson, supra.*

2. We do not reach appellant's contention that the trial court's finding that Carpenter operated the insured vehicle in violation of the speed limit implies an erroneous conclusion by the trial court that a permissive user's illegal acts destroy permission.